**Willie Lee JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–86–00979–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 22, 1989.

Discretionary Review Refused
Feb. 7, 1990.

John F. Carrigan, Houston, for appellant.

John B. Holmes, Dist. Atty., William J. Delmore, III, Jay Karahan, and Frank Onion, Asst. Dist. Attys., Houston, for appellee.

Before DUGGAN, WARREN and MIRABAL, JJ.

OPINION ON REMAND

DUGGAN, Justice.

A jury found appellant guilty of aggravated robbery. After finding two enhancement allegations true, the trial court as-

sessed punishment at 60 years confinement.

In his original appeal, appellant argued that the State had used its peremptory strikes in a racially discriminatory manner, and he was, therefore, entitled to a new trial.[1] This Court rejected appellant's contention, and found that appellant had not met his burden of establishing a prima facie case of discrimination.

The Court of Criminal Appeals, without expressing an opinion on the merits of the issue, remanded this case to give us the opportunity to review appellant's point of error in light of the more recent case of *Keeton v. State*, 749 S.W.2d 861 (Tex.Crim. App.1988).

The *Keeton* court, following *Batson v. Kentucky*, set out the procedure for challenging the State's peremptory strikes on the basis of race discrimination. First, the defendant must make a prima facie showing that the peremptory challenges were used by the State to discriminate against black venirepersons, which creates a presumption of discrimination. *Keeton*, 749 S.W.2d at 867. The burden then shifts to the State to articulate legitimate, non-discriminatory reasons for the challenges, which relate to the particular case to be tried. *Id.* at 862. If the prosecutor articulates racially neutral reasons for the strikes, the defendant may offer evidence showing that the prosecutor's reasons are merely a sham or pretext. *Id.* at 868.

In this case, after the jury was selected, but before it was sworn, appellant tendered a written motion, which he urged orally. As appellant states in his brief on remand, his written motion "set out that Appellant was black and that certain members of his race had been excluded from the venire by the State's use of its peremptory challenges." In urging his written motion orally, appellant's trial counsel stated:

May I proceed on the record just to tell the Court the motion?

The motion is to discharge the jury under the authority of *Batson v. Kentucky*, which is a recent United States Supreme Court decision, 84–6263, decided on April 30, 1986, whereby the Supreme Court ruled that the Prosecutor's removal of black veniremen violated the Defendant's amendments [sic] Six and Fourteen, which guarantees a jury to be drawn from a cross-section of the community and also provides the Defendant equal protections of the law. The way I read this particular decision, Your Honor, after I have filed this motion that shifts the burden to the State, at this point in the proceeding, Your Honor.

THE COURT: That is my understanding. Proceed.

Appellant said nothing further. At that point, the State asked the court to take judicial notice that the defense attorney struck one black venireperson, and that two blacks were sitting on the jury panel. Appellant stipulated to those facts, and the court took judicial notice. The State then gave its reasons for the peremptory strikes.[2]

In his explanations, the prosecutor stated that he struck juror number five because her body language indicated she was opposed to the State, e.g., her arms were crossed in front of her, she frowned during his voir dire, and she did not participate in the questions and answers as much as other jurors. He also noticed that she nodded in agreement with certain statements made by defense counsel.

The prosecutor stated that he struck juror number 24 because she was a teacher in the Houston Independent School District, and her husband was a teacher at Texas Southern University, and in his experience, teachers were generally not "appropriate State's jurors." Also, he noticed

---

1. Appellant's case was tried on November 3, 1986, shortly after the Supreme Court's decision in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). At that time, the procedural aspects of a "Batson" motion were undefined.

2. Neither appellant's written nor oral motion state how many black venirepersons were struck by the prosecutor. However, by adding the strikes contained in the stipulation with the strikes included in the State's neutral explanations, we have determined that the State struck four of an original seven black venirepersons.

that she tended to talk more with the defense attorney than with the prosecutor.

The prosecutor explained that jurors 27 and 32 were struck because they were young and close in age to the defendant, and he was afraid that they might identify with the defendant. Also, number 27 was a salesman; the prosecutor found that salesmen tended to be liberal in their approach to criminal justice. Number 27 did not appear to take an interest in voir dire, but did nod several times to statements made by defense counsel.

Number 32 was young, single, and had no children. He was very low in the hierarchy of a large corporation. The prosecutor saw that as synonymous with the defendant's place in the government hierarchy as the accused. He thought, as a result, number 32 might have too much sympathy for the defendant. He noted that the juror wore sunglasses throughout voir dire. He did not have the impression that number 32 had "a stake in the community" as much as other jurors on the venire.

Once the prosecutor denies any racial motive, and provides clear, reasonably specific, neutral explanations for his strikes, the trial judge becomes the factfinder and, as such,

> must necessarily gauge the credibility of [the prosecutor's] testimony, determined in part, at least, by the plausibility of his explanation. This task is no different in principle than any other factfinding enterprise.

*Tompkins v. State*, 774 S.W.2d 195, 202 n. 6 (Tex.Crim.App.1987), *aff'd,* —— U.S. ——, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989); *see also Keeton,* 749 S.W.2d at 865–66, 868. We will not substitute our judgment of the witness's credibility and evidentiary weight for those of the factfinder. *Tompkins,* 774 S.W.2d at 202. "A reviewing court should reverse [the trial court's] findings only when they are not supported by sufficient evidence or, as we often say, for an 'abuse of discretion.'" *Id.* at 202–03 n. 6A.

The defendant has the burden of persuading the trial judge by a preponderance of the evidence that the allegations of purposeful discrimination are true in fact.

*Tompkins,* 774 S.W.2d at 202. Although appellant now argues on appeal that the prosecutor's articulated reasons were pretextual, he offered neither argument nor proof to show pretext at trial. Once the State completed its neutral explanations, appellant did not cross-examine the prosecutor, or offer evidence of his own to rebut or impeach the prosecutor's statements, or argue to the trial court any comparison between the challenged black venirepersons and any of the venirepersons whom the State did not challenge. In his brief on remand, appellant now offers, for the first time, a comparison of the black venirepersons struck by the State and the white venirepersons whom the State did not peremptorily challenge. However, as noted by the *Tompkins* court:

> In a supplemental brief ... appellant has offered just such a comparison, inviting this Court to employ the record of jury selection that exists in this cause to impeach or rebut testimony given by the prosecutors at the "Batson" hearing.... However, even though the trial judge might have judicially noticed or independently recalled testimony from the jury selection process, there is nothing in the "Batson" hearing to suggest that she was requested by defense counsel to do so. In short, at the "Batson" hearing counsel for appellant gave no indication to the trial judge that he wanted her to consider the credibility of any neutral explanation offered by the State based upon the manner in which similarly-situated white veniremen were treated during *voir dire.*

> .    .    .    .    .

> Because the trial judge was not urged to make, and did not make, a finding based upon a comparison analysis in deciding the issue whether the prosecutors' neutral explanations were rebutted or impeached at the "Batson" hearing with evidence that unchallenged white veniremen also possessed the same purportedly undesirable characteristics, we do not consider this circumstance in reviewing the trial judge's findings in this cause.

*Id.* at 202–03 n. 6A. Because appellant did not ask the trial court to consider the neutrality of the State's strikes in light of a comparison analysis, or any other rebuttal evidence, we will not consider it in reviewing the trial court's finding in this case.

In view of the stipulation that two blacks remained on the jury panel, and the clear, reasonably specific, neutral explanations given by the prosecutor, we conclude that a rational trier of fact might have failed to find, by a preponderance of the evidence, an intentional discrimination on the part of the prosecuting attorney. *Tompkins,* 774 S.W.2d at 205. *Batson* leaves room for the State to exercise its peremptory challenges on the basis of the prosecutor's *legitimate* "hunches" and past experience, so long as racial discrimination is not the motive. *Keeton,* 749 S.W.2d at 865. "The challenge, after all, is still a peremptory one." *Tompkins,* 774 S.W.2d at 205.

Appellant's point of error is overruled.

The judgment is affirmed.