Michael Anthony CHIVERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–89–01039–CR.

Court of Appeals of Texas,
Dallas.

Aug. 20, 1990.

Rehearing Denied Sept. 19, 1990.

Discretionary Review Refused
Jan. 10, 1991.

Keith Jagmin, Dallas, for appellant.

Sharon Batjer, Dallas, for appellee.

Before McCLUNG, BAKER and THOMAS, JJ.

## OPINION

THOMAS, Justice.

Michael Anthony Chivers appeals from a conviction of burglary of a building. After the jury returned a guilty verdict, the trial court assessed punishment, enhanced by two prior felony convictions, at twenty-five years' confinement in the Texas Department of Corrections.[1] In a single point of error, Chivers contends that the jury selection occurred in a racially discriminatory manner. Because we hold that the State did not provide a racially neutral explanation for one of its peremptory challenges, the trial court's judgment is reversed and the cause is remanded for a new trial.

Chivers contends that the trial court erred in overruling his objection to the jury, as impaneled, because the prosecutor utilized his peremptory challenges to exclude black veniremembers on the basis of race in contravention of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In order to invoke the protection of *Batson*, a defendant must raise an inference of purposeful discrimination, and the trial court must determine that a prima facie case of discrimination exists by virtue of the State's use of its peremptory challenges. A defendant may establish a prima facie case of discrimination by showing:

1. that he is a member of a cognizable racial group;

2. that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire; and

3. that these facts and any other relevant circumstances raise an inference that the prosecutor used peremptory

---

1. Now Texas Department of Criminal Justice, Institutional Division.

challenges to exclude the venire-members on account of their race. *Batson v. Kentucky*, 476 U.S. at 96, 106 S.Ct. at 1723; *Keeton v. State*, 724 S.W.2d 58, 65 (Tex.Crim.App.1987); *see also* TEX. CODE CRIM.PROC.ANN. art. 35.261(a) (Vernon 1989). When a defendant establishes a prima facie case, the burden shifts to the State to come forward with racially neutral explanations as to why it exercised peremptory challenges against veniremembers of the same cognizable racial group as the defendant. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723; *Keeton*, 724 S.W.2d at 65.

The State used peremptory challenges to strike five black veniremembers. Chivers, who is also black, alleges on appeal that the State used peremptory challenges in a racially discriminatory way to strike three black veniremembers. The issue before this Court is whether the State provided racially neutral explanations for these peremptory strikes.

The record reflects that following voir dire the defense made the following objections:

> [Defense Counsel]: At this time the defense would request to dismiss the array and call a new array in the case for the reasons that the defendant in this case, Michael Chivers, is a black man, which is an identifiable racial group, that the attorney representing the State exercised peremptory challenge for the purpose of excluding persons from the jury on the basis of their race.
>
> Your Honor, Juror Number 4 is a black male which the State struck.
>
> . . . .
>
> Juror Number 10 is a black male which the State struck.
>
> Juror Number 28 is a black female which the State struck.
>
> . . . .
>
> Juror Number 10, Stone, is a black male and Juror Number 10, I have that he has not said anything during the entire voir dire. He gave no answers to any questions whatsoever.
>
> . . . .
>
> That's all I have, Your Honor.
>
> . . . .

> The Court: What was your reason for striking Juror Number 8?
>
> . . . .
>
> [The Prosecutor]: Additionally, Juror Number 8 was a young male. What I am looking for in this panel is—generally speaking are established, preferably older or more established people in the community, and because of the case being based on circumstantial evidence ... I'm looking for what I believe to be educated people.
>
> The Court: What was your reason for striking Juror Number 10?
>
> [The Prosecutor]: Juror Number 10 was struck for the same reason that I was looking for people who are established in the community. Juror Number 10 is 35 years old. He's not too old, he's not too young. He's on the younger end. He's only been living in the community for five years.
>
> His career as an operator with Dart [Dallas Area Rapid Transit] to me is not an indication of any type of education level, and I would also like the record to reflect that another male juror, Juror Number 2, was stricken—he's a white juror—simply because of the fact that he is unemployed and because of his young age.
>
> The Court: Juror Number 2 is 25 and unemployed. Juror Number 10 is 35 and has been employed for five years. Tell me again your reasons for Juror Number 10.
>
> [The Prosecutor]: Simply that I don't feel he's established in the community. He has been a resident of the community for five years, a single male. He has got a child, but he's single. And I'm also looking for some more educated people.
>
> . . . .
>
> The Court: The Court finds that the State has not exercised its peremptory challenges in a racially discriminatory way.

■ The trial court thereafter denied defense counsel's motion to dismiss the array. In reviewing the trial court's decision, we must consider the evidence in the light most favorable to the trial judge's rulings

and determine whether sufficient evidence supports those rulings. If the record supports the trial court's findings, they will not be disturbed on appeal. *Keeton v. State,* 749 S.W.2d 861, 870 (Tex.Crim.App. 1988) (*Keeton II*).[2] However, the trial judge must examine each of the prosecutor's reasons for striking a potential black juror within the circumstances of the particular case to determine whether the "neutral explanation" for the strike provides a pretext for a racially motivated peremptory challenge. *Keeton II,* 749 S.W.2d at 868. In making this determination, the trial judge must ascertain whether the prosecutor articulated a "clear and specific" explanation of "legitimate reasons" for striking the black veniremember. *Batson,* 476 U.S. at 97–98 n. 20, 106 S.Ct. at 17 n. 20. As explained in *Keeton II:*

> The trial judge cannot merely accept the specific reasons given by the prosecutor at face value, the judge must consider whether the facially neutral explanations are contrived to avoid admitting acts of group discrimination. This evaluation by the trial judge is necessary because it is possible that an attorney, although not intentionally discriminating, may try to find reasons other than race to challenge a black juror, when race may be his primary factor in deciding to strike the juror.

*Keeton II,* 749 S.W.2d at 868.

■ Once a prosecutor gives a racially neutral explanation that supports adequately and legally a judgment in the State's favor, a fact issue arises which the trial court can only resolve by its assessment of evidentiary weight and credibility. *Tompkins v. State,* 774 S.W.2d 195, 202 (Tex.Crim.App.1987), *aff'd,* 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989).

■ With these principles in mind, we now review the trial court's determination that the prosecutor did not exercise its peremptory challenges in a racially discriminatory manner. We focus our review on the State's use of a peremptory strike against veniremember number ten, Donald Ray Stone. One of the State's primary reasons for striking Stone was that his occupation as a DART operator did not indicate any level of education. A low intelligence level of a prospective juror constitutes a legitimate basis for the exercise of peremptory challenges. However, in cases which support this concept, the record clearly reflects the veniremember's lack of intelligence. *See e.g., Hastings v. State,* 755 S.W.2d 183 (Tex.App.—San Antonio 1988, pet. ref'd) (veniremember misspelled a word and wrote date of birth in wrong space on juror information card); *Rice v. State,* 746 S.W.2d 356 (Tex.App.—Fort Worth 1988, pet. ref'd) (veniremember misspelled several words on juror information card). In the instant case, the prosecutor had no basis for concluding that Stone possessed low intelligence. At no point did the prosecutor address Stone with individualized questions so as to ascertain his level of intelligence and/or education. Stone's only response, which consisted of "no," was in answer to a general question, and actually favored the State.

Failure by the State to ask Stone any meaningful questions weighs heavily against the legitimacy of any race-neutral explanation. *Keeton II,* 749 S.W.2d at 866. In *C— E— J— v. State,* 788 S.W.2d 849, 857 (Tex.App.—Dallas 1990, no writ), this Court held that the State's explanation of a veniremember's inattentiveness was not a plausible, race-neutral reason. The Court noted that the State asked no questions of the prospective juror, and the record did not support her inattentiveness. The Court stated that "[i]n the absence of any direct effort by the prosecutor to engage [a veniremember's] attention with individual questions, it is natural to suspect that neither the prosecutor['s] nor the judge's attention was sufficiently focused on her to permit them to fairly assess or judge her attentiveness." *C— E— J—,* 788 S.W.2d at 857; *see also Somerville v.*

---

**2.** We do not consider the effect, if any, which the recent decision of *Meraz v. State,* 785 S.W.2d 146 (Tex.Crim.App.1990) has on the standard for reviewing evidence introduced at a *Batson* hearing. The difference is of no consequence under this record because the evidence does not pass either standard.

*State,* 792 S.W.2d 265 (Tex.App.—Dallas 1990, n.p.h.) (not yet reported) (State's explanation that veniremember was involved in NAACP was not race-neutral where State failed to question him concerning the extent of his involvement). By concluding that Stone had low intelligence and/or education by virtue of his occupation instead of addressing Stone with individual questions, the State based its explanation for the peremptory challenge on a group bias without showing that the group trait applied to Stone specifically. Such explanation weighs heavily against the legitimacy of the State's allegedly race-neutral argument. *Keeton II,* 749 S.W.2d at 866.

■ Another explanation given by the State to support its strike was that Stone, at thirty-five years of age, was too young. Like a veniremember's level of intelligence and/or education, age may constitute a race-neutral reason upon which to base the exercise of peremptory challenges. *Chambers v. State,* 724 S.W.2d 440 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd). However, because an attorney may unintentionally find reasons other than race to strike a black veniremember when race was actually the motivating factor, the State's explanations must be closely examined. *Keeton II,* 749 S.W.2d at 868. The prosecutor in the instant case merely stated that Stone was neither too young nor too old; that Stone was on the younger end. By failing to enlighten the Court as to why he considered age thirty-five to be too young, the prosecutor failed to articulate "clear and reasonably specific" explanations of "legitimate reasons" for striking Stone. *Batson,* 476 U.S. at 97–98, 98 n. 20, 106 S.Ct. at 1723–24, 1724 n. 20. Moreover, the State attempted to justify its strike of Stone by comparing him to Murray, a white veniremember whom the State allegedly struck for the same reasons, namely, intelligence, age, and establishment in the community. A comparison of the two men reveals more differences than similarities. While the State compares them in its assertion that both are too young, Stone is ten years older than Murray. Unlike Murray, who had no job, Stone had held a job for the past five years.

Finally, while Murray lived in Dallas County for only one and one-half months, Stone resided in Dallas County for five years. Thus, Stone was significantly more established in the community than Murray. Finally, the record reflects that one-half of the jurors selected were younger than Stone.

■ Under these facts, we hold that the State's explanation does not give a plausible, racially neutral reason to support Stone's exclusion. We need not address the propriety of the peremptory challenges of veniremembers other than Stone because we conclude that the record fails to support the trial court's conclusion that the prosecutor's strike of that prospective juror was race-neutral. The exclusion of even one member of Chivers' race from the jury for racial reasons invalidates the entire jury selection procedure and entitles Chivers to a new trial. *See Keeton,* 724 S.W.2d at 65 n. 5 (discriminatory strike of any black prospective juror, even if others are ultimately seated on the panel, constitutes *Batson* violation).

We reverse the trial court's judgment and remand the cause for a new trial.