Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB










 













Opinion Issued March 9,
2006

     

 

 

 

 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-05-00462-CR

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



JEROME LATEEK BARBER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

 



On Appeal from the 339th District Court

Harris County, Texas

Trial Court Cause No. 959899

 








 

 



MEMORANDUM OPINION

          Appellant
Jerome Lateek Barber pleaded not guilty to a charge of robbery.  A jury found him guilty and, having found
true two enhancement convictions, sentenced him to sixty years’
imprisonment.  In three issues, Barber
contends the trial court erred in denying his motion to suppress an overly
suggestive pretrial identification, and the evidence is legally and factually
insufficient to support his conviction. 
We affirm.

Facts

          In
August 2003, as Saroj Patel walked her groceries to her car in a Kroger parking
lot, a white Volvo pulled in front of her, blocking her path to her
vehicle.  A man emerged from the
passenger side of the car, and walked to the back of the car apparently to see
if something was wrong with the rear end. 
The man then grabbed Patel’s purse from the cart, wrestled it from her
as she fell on top of the cart, and jumped back in the Volvo as it drove
away.  

          Sylvia
Roberts witnessed the incident and went over to help Patel.  Roberts’s husband followed the Volvo and
retrieved the license plate number. 
Police arrived a few minutes after the incident and immediately sent a
description of the vehicle and the suspects out to officers in the area.  Within minutes, police pulled over Barber and
his friend, Howard Murray, in a white Volvo about a mile from the scene of the
incident.  Officer Anthony Kent
accompanied Roberts and Patel to the location where police had detained Barber
and Murray, informing them that police had stopped a vehicle they believed was
involved.  Roberts and Patel viewed
Barber and Murray, who were seated together in the back of a police car, at the
same time and in the presence of Officer Kent and several other officers.  Roberts identified both men, and Patel
identified Murray.  Officer Kent then
informed Patel that police had found her purse in the back of Barber’s vehicle.

          At
trial, Barber moved to suppress Roberts’s identifications of him both in-and
out-of-court.  After hearing the
testimony of Roberts and Officer Kent, the court denied the motion, finding the
pretrial identification procedure was not impermissibly suggestive based on the
Biggers factors.[1]  Roberts testified before the jury that she
saw Barber and Murray in the checkout line at Kroger, and that she recognized
them in the white Volvo in the parking lot. 
She testified that the parking lot was well lit and she had a clear view
of Barber through the windows of the car, but the car was blocking her view of Murray
and Patel, so she did not see Patel fall. 
Patel testified that Murray took her purse and pushed her on top of the
shopping cart, and that she did not see Barber at all and was unable to
identify him.  Murray testified that
Barber did not know about the robbery until after they left the scene.  The State impeached this testimony with a
recorded confession Murray gave police the night of the incident in which he
claimed the robbery was Barber’s idea.

Motion to Suppress

          In
his first issue, Barber contends the trial court erred in denying his motion to
suppress both the pretrial and in-court identifications of him by Roberts because
the near-the-scene confrontation at which she first identified him was
impermissibly suggestive.  Specifically,
Barber contends the pretrial identification was impermissibly suggestive
because (1) the witnesses were transported a mile from the crime scene by a
police officer who informed them two men had been pulled over in a car matching
their description, (2) the witnesses viewed the suspects at the same time and
in the presence of several police officers, (3) the suspects were seated
together in the back of a police car when they were identified, (4) Barber did
not exactly match the description given by one of the witnesses, and (5) the
witnesses did not view Barber for a sufficient time or under sufficient
conditions to be able to accurately identify him.

When challenging the admissibility of
a pretrial identification, a defendant has the burden to show, by clear
and convincing evidence based on the totality of the circumstances, that the pretrial
identification procedure was impermissibly
suggestive, and that it created a substantial likelihood
of irreparable misidentification.  Barley
v. State, 906 S.W.2d 27, 33–34 (Tex. Crim. App. 1995).  If a court finds that a pretrial
identification procedure was impermissibly suggestive, it must then consider the factors enumerated in Neil v.
Biggers to determine whether the suggestive procedure gave rise to a
substantial likelihood of irreparable misidentification.  409 U.S. 188, 199, 93 S. Ct. 375, 382 (1972).  These non-exclusive factors are (1) the
witness’s opportunity to view the offender, (2) the witness’s degree of
attention, (3) the accuracy of the witness’s description of the offender, (4)
the level of certainty at the time of confrontation, and (5) the time between
the crime and confrontation.  Id.
at 199–200, 93 S. Ct. at 382.

The suggestiveness of the pretrial
identification procedure in this case is a mixed question of law and fact that
does not turn on the evaluation of the credibility and demeanor of the
witnesses, so we apply a de novo standard of review to this issue.  Loserth v. State, 963 S.W.2d 770, 772–73
(Tex. Crim. App. 1998); Burkett v. State, 127 S.W.3d 83, 86 (Tex. App.—Houston
[1st Dist.] 2003, no pet.).  The Biggers
factors are treated as issues of fact and are viewed in the light most favorable
to the trial court’s ruling.  Ibarra
v. State, 11 S.W.3d 189, 195 (Tex. Crim. App. 1999). The five factors are
then reviewed de novo against “the corrupting effect” of the suggestive
pretrial identification procedure.  Id.
at 195–96; Loserth, 963 S.W.2d at 773–74.  Reliability is the “linchpin” in determining
admissibility of such identification testimony.  Barley, 906 S.W.2d at 34. Testimony is
reliable, and therefore admissible, if the circumstances reveal no substantial
likelihood of misidentification despite a suggestive pretrial procedure.  See Ibarra, 11 S.W.3d at 195.  

A certain amount of suggestiveness is
inherent in any “on-the-scene” confrontation in the presence of police
officers.  See Stovall v. Denno,
388 U.S. 293, 302, 87 S. Ct. 1967, 1972 (1967); Garza v. State, 633
S.W.2d 508, 512 (Tex. Crim. App. 1982).  Though
Barber is correct that one-man showups have been widely
criticized as suggestive, their suggestiveness does not necessarily render an in-court
identification inadmissible.  See Stovall,
388 U.S. at 302, 87 S. Ct. at 1972; Barley, 906 S.W.2d at 34; Garza,
633 S.W.2d at 512.  Identification at or
near the scene of an offense, shortly after its occurrence, may be appropriate
because the witnesses’ memories are still fresh and accurate.  Garza, 633 S.W.2d at 512; Powell v. State, 837
S.W.2d 809, 811 (Tex. App.—Houston [1st Dist.] 1992, pet. ref’d).  Such a procedure also allows the police to
release innocent suspects
after exoneration and continue the search while the perpetrator may still
be in the area.  Powell, 837
S.W.2d at 811–12.  Thus, we turn to the Biggers
factors to determine if, based on the totality of the circumstances, the
identification was reliable and therefore admissible.

Roberts testified that she first saw
Barber in line inside the store.  When
she went to the parking lot, she again saw Barber in his vehicle about ten to
fifteen feet away through the open driver’s side window.  After Murray took Patel’s purse and jumped
into the car, Barber drove toward Roberts, swerving around her, and Roberts saw
him again through the windshield of his vehicle.  Though the incident occurred around nine
o’clock at night, Roberts and Officer Kent both testified that the parking lot
was well lit.  Not long after the
incident, Officer Kent took Patel and Roberts to the location where Barber and
Murray had been detained, which was about a mile from the scene of the
incident.  Though Roberts and Patel
viewed the suspects at the same time, Roberts identified Barber and Murray
first, while Patel was unable to identify Barber—thus, Roberts’s identification
of Barber was not affected by Patel’s presence. 
In addition, Roberts and Officer Kent both testified that Roberts was
confident in her identification at the scene of the detention.  

Though Barber argues the
identification is unreliable because Officer Kent told Roberts and Patel that
police had pulled over the car they believed was involved in the robbery, a pretrial
identification procedure is not impermissibly suggestive merely because a witness may have believed one of the
individuals was a suspect.  Harris v.
State, 827 S.W.2d 949, 959 (Tex. Crim. App. 1992); Abney v. State, 1
S.W.3d 271, 275 (Tex. App.—Houston [14th Dist.] 1999, pet. ref’d).  Barber also argues the identification was
unreliable because Roberts described the assailants as being in their late
teens or early twenties, yet Barber and Murray were both thirty-seven at the
time of the incident.  However, the fact
that Roberts misjudged the ages of the suspects does not render the
identification unreliable in light of her several opportunities to view the
suspects, her ability to identify them shortly after the incident, and her
level of certainty that Barber and Murray were the men involved in the robbery.
 Considering the totality of the circumstances,
we hold the identification procedure did not give rise to a substantial
likelihood of irreparable misidentification.

Furthermore, if an in-court
identification is based upon knowledge independent from the allegedly improper
pretrial procedure, it is admissible.  See
Buxton v. State, 699 S.W.2d 212, 216 (Tex. Crim. App. 1985); Rojas v.
State, 171 S.W.3d 442, 449 (Tex. App.—Houston [14th Dist.] 2005, no pet.).  Here, Roberts testified that she saw Barber
inside the store, and that she recognized him when she later saw him in the
parking lot.  Thus, Roberts’s ability to
identify Barber had a source independent of the suggestive identification
procedure.  Accordingly, we hold the
trial court did not err in denying Barber’s motion to suppress.

Legal and
Factual Sufficiency

In his second and third issues,
Barber argues the evidence is legally and factually insufficient to support his
conviction because no evidence supports the jury’s finding that Barber intended
to assist Murray commit a robbery, or even that he knew a robbery was taking
place.  

When evaluating the legal sufficiency of the evidence, we view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319,
99 S. Ct. 2781, 2789 (1979); Drichas v. State, 175 S.W.3d 795, 798 (Tex.
Crim. App. 2005).  When evaluating factual
sufficiency, we consider all the evidence in a neutral
light to determine whether the jury was rationally justified in finding guilt
beyond a reasonable doubt.  Zuniga v.
State, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004).  Evidence may be insufficient if, considered by
itself, it is too weak to support the verdict, or if, weighing all the
evidence, the contrary evidence is strong enough that the
beyond-a-reasonable-doubt standard could not have been met.  Id. at 484–85.  Under either review, the
fact-finder is the exclusive judge of the witnesses’ credibility and the weight
to be given to their testimony.  Jones
v. State, 944 S.W.2d 642, 647–48 (Tex. Crim. App. 1996).

A person is guilty of robbery if, in
the course of committing a theft, and with intent to obtain or maintain control
of the property, he intentionally, knowingly, or recklessly causes bodily
injury to another.  Tex. Pen. Code Ann. § 29.02 (Vernon
2003).  Theft is the unlawful appropriation
of another’s property with intent to deprive the owner of the property.  Id. § 31.03 (Vernon Supp. 2005).  The State charged Barber as a party to the
offense, so he could be found guilty if, acting with intent to promote or
assist the commission of the robbery, he solicited, encouraged, directed,
aided, or attempted to aid Murray in the commission of the robbery.  Id.
§§ 7.01(a), 7.02(a) (Vernon 2003). 
Direct evidence of culpability is not necessary to support a conviction;
intent or knowledge may be inferred from the acts and circumstances surrounding
a crime.  See Guevara v. State,
152 S.W.3d 45, 49–50 (Tex. Crim. App. 2004). 


Standing alone, proof that an accused
was present at the scene of the crime or assisted the primary actor in making
his getaway is insufficient to convict under the law of parties.  Beardsley v. State, 738 S.W.2d 681,
685 (Tex. Crim. App. 1987); Wooden v. State, 101 S.W.3d 542, 546 (Tex.
App.—Fort Worth 2003, pet. ref’d).  However,
evidence that the defendant was physically present and encouraged commission of
the offense by acts, words, or other agreement is sufficient.  Becker v. State, 840 S.W.2d 743, 746
(Tex. App.—Houston [1st Dist.] 1992, no pet.). 
The evidence must show that, at the time of the offense, the parties acted together, each contributing some part toward the execution of a
common purpose.  Ransom v. State,
920 S.W.2d 288, 302 (Tex. Crim. App. 1994).  A jury may properly consider the events
occurring before, during, and after the commission of the offense, and may rely
on a defendant’s actions and other circumstantial evidence demonstrating an understanding and common scheme to commit the offense.  See Salinas v. State, 163 S.W.3d 734,
739–40 (Tex. Crim. App. 2005).  For
example, a jury may infer guilt if a defendant flees the scene.  Bigby v. State, 892 S.W.2d 864, 883
(Tex. Crim. App. 1994).  If the record
supports conflicting inferences, we presume that the trier of fact resolved any
conflict in favor of the prosecution, and we defer to that resolution.  Matson v. State, 819 S.W.2d 839, 846
(Tex. Crim. App. 1991). 

Here, it is undisputed that Murray
committed a robbery.  Murray testified
that he grabbed Patel’s purse and struggled to free it from her grip.  Patel and Roberts both identified Murray as
the man who took Patel’s purse.  Patel
testified that Murray pushed her on top of the cart while taking her purse, and
Roberts testified that she saw Patel lying under the cart after the incident
yelling “my purse, my purse.”  Roberts
testified that, immediately after the incident, Patel’s leg and arm were red
from falling, and Patel testified that she suffered bruising from the incident.  Murray, Roberts, and Patel testified that
after taking the purse, Murray jumped in a white car, and the car drove
away.  Patel, Roberts, and Officer Kent
testified that the police found Patel’s purse in the back of Barber’s car.  

Thus, the question before this court
is whether the State presented sufficient evidence that Barber intended to
assist in the commission of a robbery.  Murray
and Roberts both testified that Barber sat in the driver’s seat of the car
while Murray took Patel’s purse.  Murray
testified that he threw the purse in the car, jumped in the back seat, and told
Barber to take off.  Roberts testified
that Barber had to swerve around her to exit the parking lot.  Roberts further testified that her husband
followed Barber and Murray out of the parking lot to obtain the license plate
number, and Murray testified that he told Barber they were being followed.  Roberts testified that Barber’s window was
down, and Roberts and Patel both testified that immediately after Murray took
her purse, Patel yelled “my purse, my purse.” 
The jury could infer from this evidence that Barber knew Murray was
committing a robbery, and was complicit in Murray’s request to flee the scene.

Barber contends Murray’s testimony at
trial that Barber did not know a robbery was being committed until after they
fled demonstrates that Barber lacked the requisite intent.  Murray testified that the robbery was his
idea, and that he asked Barber to drive him to the store.  When they arrived, Murray exited the car to
purchase items he needed while Barber found a place to park.  Murray decided to grab the purse, jumped in
the back seat, and told Barber in a “real anxious” tone to take off.  

The State impeached Murray by playing
for the jury segments of Murray’s videotaped statement taken immediately after
his arrest, wherein he told police that the robbery had been Barber’s idea.[2]  Based on this impeachment evidence, the jury
could have disbelieved Murray’s testimony that Barber was not involved.  In addition, Murray’s testimony that he
jumped into the back seat of the car shortly after exiting to go shopping, and
that Barber complied with Murray’s request that Barber “take off,” both support
an inference that Barber knew a robbery was taking place, and intended to
assist in the getaway.  Viewed in a light
most favorable to the verdict, a rational jury could have found Barber guilty
as a party to the robbery.  Moreover, viewed
in a neutral light, the jury was rationally justified in finding Barber
guilty.  Accordingly, we hold the
evidence is legally and factually sufficient to support Barber’s conviction.

 

 

 

 

 

 

Conclusion

We hold the trial court did not err
in denying Barber’s motion to suppress the pretrial identification, and the
evidence is legally and factually sufficient to support the jury’s
verdict.  We therefore affirm the
judgment of the trial court.

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Justices Taft,
Higley, and Bland.

Do not publish.  Tex. R.
App. P. 47.2(b).

 











[1] See Neil v. Biggers, 409 U.S. 188, 93 S. Ct
375 (1972).

 





[2] The State refers to Murray’s statement on the tape
that the robbery was Barber’s idea as substantive evidence of intent.  However, the State offered the tape for impeachment
purposes only, so the jury could not have considered the substance of the tape
as evidence of any elements of the charged offense—nor may we do so on appeal.