**Roosevelt Henry McKINNEY, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 13–87–417–CR.**

Court of Appeals of Texas,
Corpus Christi.

Nov. 30, 1988.

---

**1.** *But see Harrison v. State,* 713 S.W.2d 760, 764 (Tex.App.—Houston [14th Dist.] 1986, pet. ref'd).

Nate Rhodes, Corpus Christi, for appellant.

Carlos Valdez, County Atty., Corpus Christi, for appellee.

Before NYE, C.J., and BENAVIDES and DORSEY, JJ.

## OPINION

BENAVIDES, Justice.

A jury found appellant guilty of unlawfully carrying a weapon. The trial court assessed punishment at confinement for 60 days in the Nueces County Jail and a fine of $300. Appellant contends that error occurred when the State struck the only black venireman, violating *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986). Additionally, appellant contends that he was illegally stopped by police officers and that the pistol seized as a result of that illegal stop should not have

been admitted into evidence. We find merit in appellant's three points of error and accordingly reverse the judgment of the trial court.

■ By his third point of error appellant contends that the trial court erred "in refusing to quash the array after the prosecutor gave his reasons for striking the black venireman." The record reveals that appellant is a black man and that Julie Evans was the only black venireman on the panel. Essentially appellant complains that the State improperly challenged Evans on the basis of race.

After appellant objected to Evans' removal, a brief hearing was held to address the matter. The trial court apparently referred to Tex.Code Crim.Proc.Ann. art. 35.-261 (Vernon Supp.1988) to determine which party had the burden of going forward with the evidence. After some discussion, appellant pointed out to the court that the prosecutor had written "black lady" next to Evans' name on his jury strike list. Thereafter, the prosecutor gave the following explanation for his strike:

> Okay, Your Honor. She—she was one of the few ladies—if you recall, I specifically asked questions of only a few people, and she was one of the ladies I asked about if she knew how—of—of the law of unlawfully carrying a weapon around, that that was an offense, and that the— and I asked her also about the defenses that—I asked her if—if—if we proved beyond a reasonable doubt that—that he was carrying a weapon and also that— that the defense of traveling or—or that he was going hunting or—or—were not shown, that the defendant should be held guilty, and she—she said she didn't know at that point, and so I felt that her—her mind was not clear on the subject, and so that's why I struck her, or one of the reasons.

The prosecutor then admitted that Evans' race was not *the reason* he struck her, but that it was *a factor*. According to the prosecutor, the main reason for her removal was "the answer she gave to my question ... that she would hold him not guilty even if we dispensed with the defenses that

were offered." The trial court then concluded that the State had not challenged Evans on the basis of race.

In reviewing whether the trial court erred in ruling on appellant's motion, the focus of the appellate court should be on whether purposeful discrimination was established. We consider the evidence in the light most favorable to the trial judge's ruling and determine if his ruling is supported by the record. *Keeton v. State,* 749 S.W.2d 861 (Tex.Crim.App.1988). We conclude the record does not support the trial court's ruling.

The prosecutor asked juror Evans two questions. Initially, the prosecutor asked Evans if she could find the defendant guilty if he did not prove the defenses of hunting or travelling. Evans replied that she "didn't think so." We note that by asking this question, the prosecutor misplaced the burden of proof.

When the prosecutor rephrased the question and placed the burden correctly, Evans apparently stated that she could find the defendant guilty if the State proved beyond a reasonable doubt that he was carrying a weapon and was not travelling. Although Evans' actual response to the prosecutor's question was an ambiguous "Oh, yeah," the prosecutor admitted during the "Batson" hearing that he interpreted this response to mean that Evans would follow the law. Accordingly, we find the prosecutor's explanation is contradicted by the record.

In addition, and more importantly, the prosecutor admitted that race was a factor in the use of his peremptory strikes. In *Speaker v. State,* 740 S.W.2d 486, 489 (Tex. App.—Houston [14th Dist.] 1987, no pet.) a prosecutor admitted that race was a factor in the use of his peremptory strikes. The Houston Court of Appeals reversed the conviction, stating:

> While the prosecutor's candor is commendable, his statement clearly shows that he considered race a factor while selecting the jurors in appellant's trial. This basis for juror selection has tradi-

tionally been condemned. [citation omitted]

*Speaker,* 740 S.W.2d at 489.

In the case before us, the prosecutor did not rebut the appellant's prima facie case of discrimination by articulating a neutral explanation for the peremptory strike, but rather confirmed the discrimination by admitting that race was a factor in striking Evans. No "neutral explanation" can serve to rebut the presumption that the condemned practice of exclusion based on race occurred when the prosecutor admits that such an exclusion did occur. The selection process violated the United States Constitution, *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and Tex.Code Crim.Proc.Ann. art. 35.261 (Vernon Supp.1988). Appellant's third point of error is sustained.

■ Appellant's first and second points of error challenge the legality of appellant's arrest. The facts concerning appellant's arrest, as presented at the pretrial hearing, are relatively straightforward. Corpus Christi police officer Rick Warren testified that he was on special assignment in the Hialco area around 6:15 p.m. on February 13, 1987. According to Warren this is an area where drug transactions are "a real bad problem."

Warren and his partner were travelling in an unmarked police car. As they stopped at an intersection about 40 yards from appellant, they observed appellant walk across the street and approach a taxicab that drove up to a parking lot. Appellant was carrying a radio and a brown bag. Warren testified that he then saw appellant hand something through the window to the taxi driver and, in exchange, the taxi driver handed appellant something.

Warren testified that he formed an opinion based on his experience that a drug transaction was taking place. He vaguely described his experience with narcotics enforcement as crawling around in areas with binoculars, getting up on rooftops with binoculars, and getting in trees. He testified that he had observed four or five hundred drug deals in the last six or seven months,

and that "we can pretty well tell when a drug deal is taking place."

Warren testified that his belief that appellant was engaged in a drug transaction was based on the facts that the taxi pulled over when it already had a passenger, and that appellant exchanged something with the driver without getting into the cab.

After observing what he thought was a drug transaction, Warren and his partner drove up to the taxi. When appellant saw the officers, who were dressed in uniform, he started walking away. Warren yelled for appellant to stop, and appellant put his bag and radio on top of a car and walked back to Warren.

Warren testified that he smelled marihuana on appellant's breath. He searched appellant, finding a marihuana cigarette, and searched the bag, finding a pistol.

The issue in this case is whether Officer Warren was justified in ordering appellant to stop upon the facts known to him at the time of the stop. An officer may briefly detain a suspicious person to investigate possible criminal activity under certain circumstances amounting to less than probable cause. See United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979); United States v. Brignoni–Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). These brief detentions are typically termed "Terry stops," based on the Supreme Court's decision in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Although Terry did not specifically address the quantum of evidence short of probable cause which would justify a brief detention for investigation of criminal activity, Terry is often cited for its holding that a brief seizure may be made on facts which do not give rise to probable cause. See United States v. Hensley, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985); Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Reid v. Georgia, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980); Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

In this case, we must decide if the facts justify the officer's investigatory stop of appellant. The Supreme Court has enunciated a dual inquiry for evaluating the reasonableness of a "Terry stop." A court reviewing police action must inquire:

whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place.

United States v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); Terry, 392 U.S. at 20, 88 S.Ct. at 1879.

In addition, a "Terry stop" must be justified by reasonable suspicion. Based on all the circumstances, the detaining officer must have a particularized and objective basis for suspecting the particular person of criminal activity. Cortez, 449 U.S. at 417, 101 S.Ct. at 694. In determining whether there is a legitimate basis for suspicion, the facts may be viewed from a trained law enforcement officer's viewpoint. Facts meaningless to the untrained may provide the basis for the deductions and inferences which caused the officers to focus their attention on the accused. Cortez, 449 U.S. at 419, 101 S.Ct. at 695.

A case very similar to the case before us is United States v. Magda, 547 F.2d 756 (2nd Cir.1976), cert. denied, 434 U.S. 878, 98 S.Ct. 230, 54 L.Ed.2d 157 (1977). In Magda, a divided court determined that the stop was justified. An officer, in an area known for its high incidence of narcotics dealing, saw two men exchange something. Upon seeing the officer, one of the men turned away in a "rapid motion." The Court decided that the area together with the men's conduct of exchanging something and turning in a rapid motion when seeing the approaching officer were sufficient to raise a reasonable suspicion in an experienced police officer.

In United States v. Trullo, 809 F.2d 108 (1st Cir.1987), a divided court upheld a stop on "the outermost reaches of a permissible Terry stop," where the defendant, in an area known for drug transactions, got into a car, drove a short way, had a short conversation, and then got out of the car

and walked in the same direction from which he had come. Noting the nature of the area, the defendant's conduct, and the officer's testimony that such behavior was indicative of some sort of illegal transaction, the Court held that the actions of the officer were justified, despite the fact that it could hypothesize some innocent explanation for defendant's conduct.

In *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), the United States Supreme Court found a stop illegal where the defendant was seen in a drug trafficking area walking away from another man. The officer suspected that the two had just engaged in criminal activity or were about to engage in criminal activity, but decided to cease their activity upon seeing the officer. The Court found that the officer lacked any basis for suspecting the defendant of misconduct.

In *McLeod v. State,* 450 S.W.2d 321 (Tex. Crim.App.1970), the police observed the defendant looking out a washateria window. The police knew the defendant to be a narcotic addict. The defendant then went to an automobile that drove up and placed his hand inside the window, making an exchange with the driver. The defendant then got into a pickup truck. As the officer approached, the defendant put a folded paper inside his mouth, which the officer then forcibly retrieved. The Court of Criminal Appeals found the seizure lawful.

 In the present case, the evidence shows that the Hialco area where Officer Warren patrolled was known for its high incidence of drug transactions. The reputation of an area for high narcotics activity is an appropriate factor in considering whether a stop is legal. *United States v. Gomez,* 633 F.2d 999 (2d Cir.1980).

The State attempted to show that Officer Warren was experienced in detecting drug transactions. In this regard, however, the State failed to show that Officer Warren did anything other than crawl around with binoculars, get on rooftops, and climb trees. We are not willing to say that any exchange of items among persons in narcotics areas will support a stop. Officer Warren could not see what was exchanged, and the State did not attempt to show

anything about the character, size, or shape of what Officer Warren saw exchanged.

There is no evidence that the police knew either individual involved in the exchange or suspected either party of previously engaging in narcotics transactions, factors which might make a stop reasonable. Likewise, there is no evidence that drugs were normally exchanged in a manner similar to this transaction. Neither is there evidence that either party rapidly walked away upon seeing the officer, as in *United States v. Magda.*

Appellant neither repeatedly approached vehicles and exchanged goods, nor did he linger on the street waiting for someone as in *McLeod.*

That the taxicab contained a passenger at the time of the alleged transaction is a factor to be considered in determining the likelihood that the delivery of a controlled substance was occurring. This circumstance, however, more strongly suggests that a drug transaction was *not* occurring. As a matter of law, we conclude that the police officer could not have reasonably suspected the appellant of criminal activity on the basis of the articulated circumstances contained in the record before us. *See Reid v. Georgia,* 448 U.S. at 441, 100 S.Ct. at 2754. Appellant's first two points of error are sustained.

The judgment of the trial court is REVERSED and REMANDED for new trial.