Keith Lawrence
**SOMERVILLE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–87–01036–CR.**

Court of Appeals of Texas,
Dallas.

June 21, 1990.
Rehearing Denied July 26, 1990.

Keith E. Jagmin, Dallas, for appellant.

Sharon F. Batjer, Dallas, for appellee.

Before HOWELL, THOMAS and WHITTINGTON[1], JJ.

### OPINION

THOMAS, Justice.

Keith Lawrence Somerville appeals his conviction of burglary of a habitation for which the jury assessed punishment at life imprisonment in the Texas Department of Corrections.[2] Somerville raises thirteen points of error, including a claim that the jury was selected in a racially discriminatory manner. We agree; consequently, we reverse the trial court's judgment and remand the cause for a new trial.

In point of error eleven, Somerville contends that the prosecutor utilized his peremptory challenges to exclude black veniremembers from the jury on the basis of race in contravention of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The State contends that Somerville has waived any error because his objection to the jury as impaneled was untimely. We disagree with the State's contention.

The record reflects that at the end of the first day of trial the jury was seated but not sworn and the remainder of the venire was dismissed. The record also shows that Somerville filed the same day a written motion for a hearing to determine whether the State's exercise of its peremptory challenges was racially motivated. We find nothing in the record to show that Somerville presented this motion to the trial court, and there was no oral objection at the time the jury was seated and the remainder of the venire dismissed. There was, however, a hearing concerning the jury selection, and the State did not object at that time to any untimeliness of Somerville's objection. At the conclusion of the hearing, the trial court determined that Somerville had made a prima facie case of discrimination by the State and directed the prosecutor to offer any racially neutral explanations for the State's peremptory challenges. When the prosecutor finished, the trial court denied Somerville's request to cross-examine the prosecutor[3] and overruled Somerville's objection to the jury selection process. The jury was then sworn.

Article 35.261 of the Texas Code of Criminal Procedure provides in pertinent part:

(a) After the parties have delivered their lists to the clerk ... and before the court

---

1. Justice John Whittington succeeds Justice Nathan Hecht, a member of the original panel. Justice Whittington has reviewed the briefs and record in this case.

2. Now Texas Department of Criminal Justice, Institutional Division.

3. Although the disposition of this case does not require us to address any other points of error, we note that Somerville complains in the twelfth point of error of this denial of cross-examination. This Court held in *Williams v.* *State*, 767 S.W.2d 872, 874 (Tex.App.—Dallas 1989, pet. ref'd), that a defendant is entitled to cross-examine the prosecutor in such circumstances. Following the decision in *Williams*, we abated this appeal and directed the trial court to conduct a further hearing on Somerville's objection to the State's exercise of its peremptory challenges and specifically directed the court to allow Somerville to cross-examine the prosecutor. Such a hearing was conducted, affording Somerville his right to cross-examination. Thus, his complaint has been satisfied.

has impanelled the jury, the defendant may request the court to dismiss the array and call a new array in the case....

(b) If the court determines that the attorney representing the state challenged prospective jurors on the basis of race, the court shall call a new array in the case.

TEX.CODE CRIM.PROC.ANN. art. 35.261 (Vernon 1989). Thus, the Code requires that a defendant object before the jury is "impanelled." This Court has previously held that a jury is not impanelled within the meaning of article 35.261(a) until the jurors are sworn. *See Hawkins v. State*, 783 S.W.2d 288 (Tex.App.—Dallas 1989, no pet.); *Hill v. State*, 787 S.W.2d 74 (Tex. App.—Dallas, 1990, pet. filed). Somerville's objection was made before the jury was sworn; it was timely. We now turn to the merits of Somerville's *Batson* claim.

The record reflects that Somerville is black and that the prosecutor used four peremptory challenges to strike four of the five black veniremembers, including Thurston L. Jones, veniremember number 1.[4] During voir dire, Jones stated that his sister-in-law had been raped. He also stated that he was a member of a variety of trade, social and political organizations, including the National Association for the Advancement of Colored People (NAACP). Jones also stated that he read law when he was bored.

■ The issue before this Court is whether the prosecutor offered racially neutral reasons for his strike of Jones. We need not address whether the trial court was correct in finding that Somerville had established a prima facie case. As the Court of Criminal Appeals has noted, where the opposing party has done everything that would be required of him if the movant had properly made out a prima facie case, whether the movant really did so is no longer relevant. *See Dewberry v. State*, 776 S.W.2d 589, 591 n. 2 (Tex.Crim. App.1989) (quoting *United States Postal Service Bd. of Govs. v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)). "Appellate review should not become bogged down on the question of whether the defendant has made a prima facie showing in cases where the district court has required an explanation." *United States v. Forbes*, 816 F.2d 1006, 1010 (5th Cir.1987). We will assume that the trial court was correct in its holding that a prima facie case was established. Thus, the burden shifted to the State to come forward with racially neutral explanations as to why peremptory challenges were exercised against veniremembers of the same cognizable racial group as Somerville. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723. In determining whether Somerville's rights have been violated under *Batson*, the standard of review is whether, in viewing the evidence in the light most favorable to the trial court's rulings, the record supports a finding of purposeful discrimination. *Keeton v. State*, 749 S.W.2d 861, 867 (Tex. Crim.App.1988) (*Keeton II*). If the record supports the trial court's findings, they will not be disturbed on appeal. *Id.* at 867.[5]

■ The prosecutor stated that he struck Jones because he muttered under his breath that the judge talked too much, which indicated to the prosecutor a disrespect for the court. He was also concerned about Jones' membership in the NAACP because that organization had been involved in cases with the District Attorney's

4. We need not address the propriety of the peremptory challenges of veniremembers other than Jones, because we conclude that the record fails to support the trial court's conclusion that the prosecutor's strike of that prospective juror was race-neutral. The exclusion of even one member of Somerville's race from the jury for racial reasons invalidates the entire jury selection procedure and entitles Somerville to a new trial. *See Keeton v. State*, 724 S.W.2d 58, 65 n. 5 (Tex.Crim.App.1987) (*Keeton I*) (discriminatory strike of any black prospective juror, even if others are ultimately seated on the panel, constitutes *Batson* violation).

5. We do not consider that effect, if any, the recent decision of *Meraz v. State*, 785 S.W.2d 146 (Tex.Crim.App.1990) has on the standard for reviewing evidence introduced at a *Batson* hearing. The difference is of no consequence under this record because the evidence does not pass either standard.

office. The prosecutor stated that he felt that there was a "radical element" in the NAACP, particularly in its involvement in the law, which he did not like. Jones also indicated that he read law, which raised in the prosecutor's mind the possibility that he might "play lawyer" in the jury room.

We note that the prosecutor did not question Jones concerning his degree of involvement in the NAACP or his knowledge of the NAACP's involvement with the District Attorney's office. Nor did the prosecutor explore whether Jones could abide by his oath to follow the law as given by the trial judge despite any knowledge of the law which he might have had. We also note that Jones disclosed that his sister-in-law had been raped; the complainant in this case was also raped—by Somerville. This fact would seem to make him a desirable State's juror. Finally, the record reflects Jones had a tendency to favor the State's position by indicating that he thought there was a strong likelihood of Somerville's guilt since there was an indictment.

The United States Supreme Court held, more than a century ago, that a state denies a black defendant equal protection of the laws when it puts him on trial before a jury from which members of his own race have been purposefully excluded. *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1880). In *Batson*, the Supreme Court reiterated this principle and outlined a framework through which a defendant could prove that the prosecutor in his trial purposefully used his peremptory challenges to exclude from the jury those veniremembers sharing the defendant's race. The Court spoke eloquently on the evils of racial discrimination in jury selection:

> Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection that a trial by jury is intended to secure. "The very idea of a jury is a body ... composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, persons having the same legal status in society as that which he holds." The petit jury has occupied a central position in our system of justice by safeguarding a person accused of crime against the arbitrary exercise of power by prosecutor or judge. Those on the venire must be "indifferently chosen," to secure the defendant's right under the Fourteenth Amendment to "protection of life and liberty against race or color prejudice."

> \*     \*     \*     \*     \*     \*

> The harm from discriminatory jury selection extends beyond that inflicted on the defendant and the excluded juror to touch the entire community. Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice. *Discrimination within the judicial system is most pernicious because it is "a stimulant to that race prejudice which is an impediment to securing to [black citizens] that equal justice which the law aims to secure to all others."*

*Batson*, 476 U.S. at 86–87, 106 S.Ct. at 1717–18 (citations and footnotes omitted, emphasis added). *Batson* counsels that the judicial system must be especially careful to avoid the appearance of condoning racial discrimination. This Court would appear to condone such discrimination if we were to accept as a racially neutral explanation for the prosecutor's strike that Jones was a member of the NAACP.[6]

In *Whitsey v. State*, No. 1121-87, slip op. at 7 (Tex.Crim.App., May 10, 1989) (not yet reported), the Court of Criminal Appeals admonished trial courts and reviewing courts to avoid uncritical acceptance of the prosecutor's seemingly neutral reasons. The court reasoned that such a limitation on the review of the challenges ignores the reality that the peremptory challenge system permits discrimination by those "who are of a mind to discriminate." *Whitsey*, slip op. at 7 (quoting *Batson*, 476 U.S. at 96, 106 S.Ct. at 1722). The court further

---

**6.** The NAACP was founded in 1909 and is one of the oldest civil rights organizations in existence today. Its principal concern is equal treatment for blacks.

noted that courts must be aware that an attorney may lie even to himself in an attempt to convince himself that his motives for a strike are nondiscriminatory: "A prosecutor's own conscious or unconscious racism may lead him easily to the conclusion that a prospective black juror is 'sullen,' or 'distant,' a characterization that would not have come to his mind if a white juror had acted identically." *Whitsey,* slip op. at 7 (quoting *Batson,* 476 U.S. at 106, 106 S.Ct. at 1728 (Marshall, J., concurring)).

*Whitsey* recognizes that *Batson* is designed to protect against insidious discrimination as well as the more direct sort. After all, it would be unusual, after *Batson,* for a prosecutor to admit he struck a juror because he shared the same race as the defendant. Thus, *Whitsey* requires the court to note and give weight to subtle clues which disclose the prosecutor's conscious or unconscious intent. Latching onto the fact that Jones was a member of an organization predominantly peopled by members of the defendant's race appears to be an indicia of invidious intent. Uncritical acceptance of this reason advanced by the prosecutor is prohibited by *Whitsey* and by *Batson.*

We hold that the record fails to support the trial court's conclusion that the prosecutor's explanation for the peremptory challenge of Jones was race-neutral. In fact, the record discloses that the prosecutor's expressed reason, membership in the NAACP, was race-specific. Consequently, we sustain point of error eleven. The trial court's judgment is reversed, and the cause is remanded for a new trial before a properly selected jury.