Benito GUZMAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–98–02164–CR.

Court of Appeals of Texas, Dallas.

May 4, 2000.

C. Wayne Huff, Dallas, for Appellant.

Donald Prichard Bevis, Jr., Asst. Dist. Atty., Dallas, for State.

Before Chief Justice THOMAS and Justices O'NEILL and MILLER [1]

### OPINION

Opinion By Justice MILLER (Assigned).

Appellant Benito Guzman was charged with capital murder for causing the death of Luis Guzman, a child under the age of six years, by striking Luis with his hand and also striking Luis with and against an

1. The Honorable Chuck Miller, Former Judge, Texas Court of Criminal Appeals, sitting by assignment.

unknown object. The State did not seek the death penalty, and the case went to trial on Guzman's plea of not guilty to a jury. The jury returned a verdict of guilty, and, the punishment being fixed automatically at life in prison, the trial court sentenced Guzman to confinement for life in the Institutional Division of the Texas Department of Criminal Justice. On appeal, Guzman challenges the legal sufficiency of the evidence and also complains of the trial court overruling Guzman's *Batson*[2] objection at the conclusion of the voir dire. We conclude the evidence is sufficient, but nevertheless reverse because of voir dire error.

### Facts

Luis Guzman's mother, Jessica Limas, testified that she left her infant son Luis and his two-year-old brother, Paul, in Guzman's care when she went to work just before 3 p.m. on April 14, 1998. Around 7 p.m. that night, Guzman phoned Limas and told her that Paul had fallen on Luis and that something was wrong with Luis. Limas contacted her mother to take the child to a hospital. Two days later, Luis died in the hospital of blunt force trauma to the head.

On April 16, 1998, Guzman admitted in a statement to police that while Luis was in his care on April 14, 1998, Guzman was tripped by Paul's playfully grabbing his leg and jumping on his back. Guzman was carrying Luis at this time, and rather than fall on top of the infant, he let Luis fall away from him as Guzman himself fell. Luis's head hit the armrest of a futon bed and landed on the carpeted floor. Then, according to the statement, Paul slid off Guzman's back and landed on top of Luis. Later in the statement, Guzman admitted that he also slapped Luis in the head three to five times in an attempt to stop him from crying. Guzman reiterated these facts, for the most part, to a Child Protective Services caseworker.

Dale Swift, a pediatric neurosurgeon who treated Luis, testified that the month-old child suffered multiple skull fractures, internal hemorrhaging of the head, and bruising of the brain. Outward and visible signs of trauma also included bruising of the infant's scalp just over the eye. The injuries were the result of application of extensive force that could have been inflicted in a matter of seconds. Swift opined that the injuries were likely the result of multiple blows. Swift conceded that the injuries could have resulted from a single traumatic event, but he did not believe the injuries were consistent with a fall. It was Swift's opinion that slapping could not have caused the injuries but that striking with a closed fist could.

The medical examiner, Jeffrey Barnard, also testified. Barnard said that the autopsy of the infant revealed two skull fractures and excessive hemorrhaging. A bruise over Luis's eye was the result of blunt force. Barnard found evidence of two separate impact points. The child's massive internal bleeding of the brain and hemorrhaging of the optic nerves were the result of at least three or four impacts. The injuries to Luis's head were non-accidental, in Barnard's opinion, and were caused by marked and excessive force. When asked if a fall such as Guzman had described in his statement could have caused Luis's injuries, Barnard stated that it could not. Some other unknown object could have been the cause, but not slapping or dropping the child. If the injuries were caused by blows from a fist, the blows would have had to be administered more than once. Barnard believed that the person inflicting the blows would have known he was causing injury to the child. With these facts in mind, we turn to resolution of Guzman's challenge to the legal sufficiency of the evidence.

### Standard of Review

In reviewing the legal sufficiency of the evidence, we, as an appellate court,

**2.** See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

must determine whether, considering the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Collier v. State*, 999 S.W.2d 779, 786 (Tex. Crim.App.1999); *Urbanski v. State*, 993 S.W.2d 789, 792 (Tex.App.-Dallas 1999, no pet.). We acknowledge that the jury is the sole judge of the weight and credibility of witness testimony. *See Fuentes v. State*, 991 S.W.2d 267, 271 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 120 S.Ct. 541, 145 L.Ed.2d 420 (1999); *Dumas v. State*, 812 S.W.2d 611, 615 (Tex.App.-Dallas 1991, pet. ref'd). We must accede to the jury the responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *See Sterry v. State*, 959 S.W.2d 249, 255 (Tex.App.-Dallas 1997, no pet.). A jury's verdict may not be overturned unless it is irrational or supported by only a "mere modicum" of evidence. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988).

### Application of the Standard of Review

■ Murder, intentionally or knowingly committed, is a result oriented offense. *See Cook v. State*, 884 S.W.2d 485, 490 (Tex.Crim.App.1994). That is, the accused must have intended the result, death, or have been aware that his conduct was reasonably certain to cause that result. *See id.* Guzman asserts in his brief that there is no evidence he possessed either of these requisite mental states to commit murder because there is no evidence he intended to kill Luis or that he knew his actions were reasonably certain to cause Luis's death. The State replies that the evidence overwhelmingly supports the jury's verdict.

■ Viewed in the light most favorable to the verdict, the evidence showed that Luis was struck with a great deal of force three or four times with a closed fist or harder object. Luis was in the sole care of Guzman, who admitted that he slapped the child to stop him from crying. Guzman's accounts to Limas, the police, and the caseworker regarding how the child was injured differed to some degree. Early on, when first talking to Limas, Guzman claimed he did not know what had happened to Luis. Later, Guzman offered three explanations: (1) that Paul fell on Luis, (2) that Guzman dropped Luis, and (3) that Guzman slapped Luis. None of these supposed events was capable of causing the actual injuries Luis suffered. Outward and visible signs of trauma also included bruising of the infant's scalp just over the eye. According to the medical testimony, the severity of the injuries was such that the person causing them would have known he was seriously injuring the child.

The jury had before it the medical evidence that this was an intentional and knowing killing, done by the administration of strong force blows to the head. These were blows so powerful that the inflictor would have known he was injuring the child. The jury knew that Guzman was the only person around the child capable of inflicting "excessive" or "extensive" force in the form of blows. The jury had before it the apparent inconsistencies Guzman told about the origin of Luis's injuries. From this evidence, a rational jury could have inferred that Guzman struck the one-month-old infant repeatedly, knowing that the blows were reasonably certain to cause the infant's death. Thus, we conclude the evidence is legally sufficient to support the verdict. Point of error number one is overruled.

### The *Batson* Issue

■ In his second point of error, Guzman contends that the State peremptorily struck a potential juror because of the juror's race and gender, thus violating his right to equal protection under the Fourteenth Amendment. *See J.E.B. v. Alabama ex rel T.B.*, 511 U.S. 127, 145, 114

S.Ct. 1419, 128 L.Ed.2d 89 (1994); *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Fritz v. State*, 946 S.W.2d 844, 847 (Tex.Crim.App.1997). We note that whether the improper strike is based on race or gender, it is treated equally at law and is universally disapproved for identical reasons. *See Fritz*, 946 S.W.2d at 846.

We have previously enunciated the standard of review in cases such as this. *See Bausley v. State*, 997 S.W.2d 313, 315–16 (Tex.App.-Dallas 1999, pet. denied). In *Bausley*, this Court held:

> When reviewing a *Batson* challenge, we examine the record in the light most favorable to the trial judge's ruling. We reverse the trial judge's ruling only when it is clearly erroneous. A ruling is clearly erroneous when, after searching the record, we are left with the "definite and firm conviction that a mistake has been committed." If the trial judge's ruling is supported by the record, including the voir dire, the prosecutor's explanation of her peremptory challenges, appellant's rebuttal, and any impeaching evidence, then the trial judge's ruling is not clearly erroneous.
>
> To challenge the State's use of peremptory strikes under *Batson*, a defendant must first make a *prima facie* showing that the State exercised peremptory strikes on the basis of race. Once a defendant makes a *prima facie* showing of purposeful discrimination, the State must then provide a race neutral explanation for striking the prospective jurors in question. This step of the process does not demand a persuasive or even plausible explanation; rather, the State's reason for the strike will be deemed race neutral unless a discriminatory intent is inherent in the prosecutor's explanation. If the State provides a race neutral explanation for its strikes, the defendant must rebut the State's explanation or show that the explanation was merely a sham or pretext. To meet

this burden, the defendant may call witnesses and introduce evidence just as in any other evidentiary hearing. The defendant has the ultimate burden of persuasion to establish that the allegations of purposeful discrimination are true.

*Id.* (citations omitted).

In the second step of this process, where the State offers an explanation for the strike, even a "silly or superstitious" explanation will be acceptable as long as it is race or gender neutral. *See Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995). A neutral explanation in this context means an explanation that is merely based on something other than the race or gender of the juror. Unless a discriminatory intent is "inherent," the explanation will be deemed race or gender neutral. *See Hernandez v. New York*, 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). It is only at the third step that the persuasiveness of the justification becomes relevant-the step in which the trial court decides whether the opponent of the strike has carried his burden of proving purposeful discrimination. *See Purkett*, 514 U.S. at 768, 115 S.Ct. 1769. It is in judging the trial court's decision at step three that the "clearly erroneous" standard of appellate review is applied. *See Whitsey v. State*, 796 S.W.2d 707, 726 (Tex.Crim.App.1989).

Returning to the case at bar, at the close of the voir dire, Guzman challenged the State's use of peremptory strikes against six venirepersons who were either Hispanic or African–American.[3] The State then gave reasons for all of its strikes. The only challenge on appeal is against the reasons given for striking venireperson Leacher, an African–American male. When explaining this strike, the prosecutor stated:

> Number 17, together with Mr.—number 15, Mr. Gallegos, they are the only two single males on the panel. It's the

---

**3.** Guzman noted for the record that he was a Hispanic male.

State's contention—single males with no children.

It's the State's contention that this being a case that involves family violence, violence against a child, we prefer to have probably not only women but also individuals who have children who are going to be able to comprehend the issues that are going to be at hand.

My co-counsel as well as myself and Ms. Yoo [another prosecutor] also noted that several times during the voir dire during the Court's voir dire that number 17, Mr. Leacher, fell asleep or shut his eyes for long extended periods of time.

Guzman maintains that because the reason given by the prosecutor was clearly gender based, Guzman was deprived of equal protection under the law. *See J.E.B.*, 511 U.S. at 146, 114 S.Ct. 1419.

 We find ourselves at step two of the evaluation process, the facial validity of the explanation. The facial validity of the explanation is a question of law, not of fact. *See Purkett*, 514 U.S. at 768, 115 S.Ct. 1769. Clearly what we have here is an explanation that both is and is not based on gender. The prosecutor stated that Leacher was struck because, in this family violence case, the State preferred women to men and adults with children to adults without children. He was also struck because he closed his eyes for an extended period of time. The first reason is patently gender based. The other two are not. We are therefore confronted with the question of whether a reason for a peremptory strike that is partially based on gender can be gender neutral. The State contends that there are no Texas cases addressing the issue of a peremptory strike where an improper factor was one of several considerations in the decision making process. We disagree.

A divided court of criminal appeals first confronted this question in *Hill v. State*, 827 S.W.2d 860, 866 (Tex.Crim.App.1992). In *Hill*, in answer to a *Batson* claim, the court held, "We agree that race may be a factor coexisting with a non-racial reason for a strike, however, race may not be the reason for the strike." *Id.* Under *Hill*, the fact that a prosecutor mentions race as part of his explanation for a peremptory challenge is indicative, but not conclusive, of purposeful discrimination in the case. *Id.* at 869.[4] However, *Hill* was a plurality decision with four judges joining this proposition, four judges joining a concurring opinion stating that race may never be even a factor in a "race neutral" reason for a strike, and the ninth judge concurring in the result.[5] *See id.* at 870 & 874.

The court of criminal appeals has not revisited this area since *Hill*, but the Texas Supreme Court, before the issuance of *Hill*, rejected the reasoning of the aforementioned plurality's holding in favor of the position taken in the concurring opinion. *See Powers v. Palacios*, 813 S.W.2d 489, 491 (Tex.1991). In *Powers*, because the plaintiff made a *Batson* challenge, the defendant was called upon to give a reason for his strike of a black woman. *See id.* at 490 n. 1. The defendant stated that race "certainly figured into [the peremptory strike against a black female], but . . . was not the sole reason for striking her. . . ." *See id.* In reversing the judgment and remanding the case for a new trial, the unanimous court held:

> Here, Powers established that opposing counsel had exercised a peremptory challenge discriminatorily. Such "automatic invocation of race stereotypes retards [our] progress [as a multiracial democracy] and causes continued hurt and injury." . . . We hold that equal protection is denied when race is a fac-

4. The court went on to hold that-under the circumstances of his case-Hill had proved the State's reasons for exercising a peremptory strike against a black man, because he would identify with the defendant and because the

prosecutor did not like the man's demeanor, were pretextual. *See Hill,* 827 S.W.2d at 870.

5. The ninth judge is the author of this opinion.

tor in counsel's exercise of a peremptory challenge to a prospective juror.

*Id.* at 491 (quoting *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 629–30, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991)) (footnote omitted).

Later, the Corpus Christi Court of Appeals, relying on *Powers,* held that even if race is but one factor in exercising a peremptory strike, the strike still runs afoul of *Batson* and requires reversal. *See Benavides v. American Chrome & Chems., Inc.,* 893 S.W.2d 624, 627 (Tex. App.-Corpus Christi 1994), *writ denied,* 907 S.W.2d 516 (Tex.1995). In reaching this holding, the court of appeals asserted that it and the Texas Supreme Court were going a step further than most jurisdictions in interpreting *Batson. Id.* at 626. In a published order denying writ of error in *Benavides,* the Texas Supreme Court purposefully reaffirmed the *Powers* decision. The court also pointedly disagreed with the court of appeals's characterization of *Powers* as a step further than the prevailing jurisprudence of the country. *See American Chrome & Chems., Inc.,* 907 S.W.2d at 517. By this published order, the Texas Supreme Court was clearly taking the position that in holding that equal protection is denied when race is a factor in counsel's exercise of a peremptory challenge to a prospective juror, it was in step with, not a step ahead of, prevailing holdings under *Batson.*

In criminal cases, the Corpus Christi court and the Houston First Court of Appeals have reached the same result for the same reasons. *See McKinney v. State,* 761 S.W.2d 549, 550–51 (Tex.App.-Corpus Christi 1988, no pet.); *Speaker v. State,* 740 S.W.2d 486, 489 (Tex.App.-Houston [1st Dist.] 1987, no pet.). In *McKinney,* the Corpus Christi court held that a prosecutor's explanation for a peremptory strike that admitted race was one factor among others in his overall decision to strike the venireperson was not race neutral. *See McKinney,* 761 S.W.2d at 551. In *Speak-*

*er,* the Houston First court held that a prosecutor's explanation for a peremptory strike that admitted race was a factor but not an overriding factor, was facially inadequate as a matter of law. *See Speaker,* 740 S.W.2d at 489; *see also Moore v. State,* 811 S.W.2d 197, 200 (Tex.App.-Houston [1st Dist.] 1991, pet. ref'd). Judge Baird, in his concurrence in *Hill,* opined that Texas appellate courts should adopt the holdings of *Speaker* and *McKinney* in criminal cases. *See Hill,* 827 S.W.2d at 875 (Baird, J., concurring).

This Court has also been faced with a similar *Batson* explanation involving both proper and improper factors. *See Somerville v. State,* 792 S.W.2d 265, 267–68 (Tex. App.-Dallas 1990, pet. ref'd). In *Somerville,* the prosecutor's reason for a peremptory strike was of the following tenor:

> The prosecutor stated that he struck Jones because he muttered under his breath that the judge talked too much, which indicated to the prosecutor a disrespect for the court. He was also concerned about Jones' membership in the NAACP because that organization had been involved in cases with the District Attorney's office. The prosecutor stated that he felt that there was a "radical element" in the NAACP, particularly in its involvement in the law, which he did not like. Jones also indicated that he read law, which raised in the prosecutor's mind the possibility that he might "play lawyer" in the jury room.

*Id.* This Court was therefore faced with four reasons for the strike, all of which were arguably race neutral and two of which were facially race neutral (muttering leading to disrespect and playing lawyer). *See id.* In an opinion written by our now Chief Justice, we first noted in passing that *Batson* counsels that the judicial system must be especially careful to avoid the appearance of condoning racial discrimination. We then held that the State's explanation was in fact race specific, not race neutral, and thus held that the record failed to support the trial court's conclu-

sion that the prosecutor's explanation for the peremptory challenge was race neutral. *See id.* at 268–69.

In this case, one of the prosecutor's several reasons for striking the venireperson, that he was male and the State preferred females, was patently gender based. Therefore, we conclude that the State did not tender a gender neutral explanation and thus did not meet the requirement of the second step in our appellate analysis. The trial court's findings of no purposeful discrimination are clearly erroneous. This type of error is not subject to a harm analysis. *See Bausley,* 997 S.W.2d at 319. Guzman's point of error number two is sustained.

The judgment of the trial court is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.