Opinion issued March 15, 2007 

 











In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00328-CR






JAMES CHARLES STEWART, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 56th District Court

Galveston County, Texas

Trial Court Cause No. 03CR2869





MEMORANDUM OPINION


 A jury convicted appellant, James Charles Stewart, of sexual assault and found
true two enhancement paragraphs alleging prior felony convictions for forgery and
unauthorized use of a vehicle. See Tex. Pen. Code Ann. §22.011(a)(1)(A) (Vernon
2003). The trial court assessed punishment at 75 years in prison. We determine (1)
whether the trial court erred by overruling appellant's Batson (1) challenge of a venire
member upon whom the State exercised a peremptory challenge, (2) whether the trial
court erred in admitting DNA evidence after having overruled appellant's motion to
suppress based on contamination of the DNA testing process, and (3) whether the trial
court erred in admitting evidence of extraneous offenses over appellant's objection
of lack of notice. We affirm. 

Facts 

 The complainant in this case chose to use a pseudonym, Ann Hamilton. Late
on the evening of September 14, 2003, Hamilton approached a waitress in the
bathroom of Kelly's Restaurant. Hamilton told the waitress that she had been raped
and kept all night and needed the waitress to use her cell phone to call the police. 
Hamilton told the waitress that the man who had raped her was currently sitting at a
table outside. The waitress used her cell phone to call 9-1-1. Five minutes later, the
police arrived. Hamilton told the officers that she had been raped and beaten. The
police escorted her to their patrol car and took her home. Based on the appearance
of her home and the description of the events that she had given them, along with her
corresponding physical injuries, the police concluded that they had probable cause
to arrest appellant.Batson Challenge

 In his first point of error, appellant contends that "the trial court erred by
overruling [his] Batson challenge by impliedly finding that the prosecutor provided
a race-neutral explanation for peremptorily striking venire member No. 18." 

 During the voir dire examination, the State sought to use a peremptory strike
on venire member 18, explaining that the strike was based on (1) the venire member's
indecisiveness regarding whether he could convict a person based on technicalities
such as jurisdiction and (2) the similarity of his situation to appellant's because he
was a blue-collar worker and plant operator and because both men worked on cars. 
Appellant objected that those were not good enough reasons to be race-neutral, they
did not meet the Batson standard, and other blue-collar workers had not been struck. 
The trial court overruled the objection and allowed venire member 18 to be struck. 

A. Standard of Review

 When addressing a Batson challenge, an appellate court reverses the ruling
only if it is clearly erroneous. Rhoades v. State, 934 S.W.2d 113, 123-24 (Tex. Crim.
App. 1996); Stewart v. State, 176 S.W.3d 856, 858 (Tex. App.--Houston [1st Dist.]
2005, no pet.). We view the evidence in the light most favorable to the trial court's
ruling, giving great deference to the trial court's determination. Stewart, 176 S.W.3d
at 858.

B. The Law

 The Equal Protection Clause prevents the State from excluding members of the
venire because of race. Batson v. Kentucky, 476 U.S. 79, 86, 106 S. Ct. 1712, 1717
(1986). To determine whether a Batson challenge should be overruled, the Supreme
Court has developed a three-step process. Purkett v. Elem, 514 U.S. 765, 767, 115
S. Ct. 1769, 1770-71 (1995). In the first step, the opponent of the strike must present
a prima facie case of racial discrimination. Id., 514 U.S. at 767, 115 S. Ct. at 1770. 
In the second step, the burden of production shifts to the proponent of the strike to
come forward with a race-neutral explanation. Id. At this step, the proponent's
reasons need not be plausible or persuasive, and even if they will most likely be found
to be a pretext for purposeful discrimination, the process should pass to step three for
the trial court to determine pretext. Stewart, 176 S.W.3d at 858. 

 If one of the proponent's several reasons for striking a member of the venire
is patently discriminatory, then the explanation is not neutral and does not meet the
second prong of the Batson analysis. Sparks v. State, 68 S.W.3d 6, 11 (Tex.
App.--Dallas 2001, pet. ref'd) (citing Guzman v. State, 20 S.W.3d 237, 244 (Tex.
App.--Dallas 2000, pet. granted)). In step three, the trial court must decide whether
the opponent of the strike has proved purposeful racial discrimination. Purkett, 514
U.S. at 767, 115 S. Ct. at 1771. Once the process has reached step three, the trial
court looks to five nonexclusive factors to analyze the challenge and to determine if
the prosecution's proffered race-neutral reasons are supported by the record, as
opposed to being sham or pretextual reasons:

 1. the reason given for the peremptory challenge is not related to the
facts of the case; 

 

 2. there was a lack of questioning of the challenged juror or a lack
of meaningful questions;

 3. disparate treatment exists, in that persons with the same or similar
characteristics as the challenged juror were not struck; 

 

 4. disparate examination of members of the venire panel occurred,
i.e., the proponent questioned a challenged juror so as to evoke a
certain response without asking the same question of other panel
members; and 

 

 5. an explanation is given based on a group bias, when the group
trait is not shown to apply to the challenged juror specifically. 

 

Keeton v. State, 749 S.W.2d 861, 866 (Tex. Crim. App. 1988); see also Stewart, 176
S.W.3d at 858.

 The proponent of the strike has the right to ask appropriate, tailored questions
of each venire member to exercise intelligently his challenge and may focus
questioning on any area that may assist any such choice, so long as it is not done in
a disparate manner. Williams v. State, 804 S.W.2d 95, 107 (Tex. Crim. App. 1991). 
In addition, merely comparing one common characteristic of venire members who
were struck with those who were not struck does not reach to the level of disparate
treatment when the State has set forth a combination of reasons to strike a potential
juror. Shuffield v. State, 189 S.W.3d 782, 786 (Tex. Crim. App. 2006).

C. Analysis

 Appellant objected during voir dire to the peremptory strike of venire member
18. This initiated the first step of the Batson challenge, the prima facie case. Rather
than challenge the existence of a prima facie case, the State argued that venire
member 18's status as a blue-collar worker and his history of working on cars put him
in a situation similar to that of appellant. The State was also uncomfortable with
venire member 18's indecisive responses to questioning about convicting based on
perceived technicalities, such as jurisdiction. In the absence of a patently
discriminatory explanation, the trial court did not err in proceeding to determine
whether purposeful discrimination had taken place and whether the State's articulated
reasons were pretextual. Appellant argued that the State failed to strike other blue-collar workers; however, the State responded that the answers that those prospective
jurors gave were satisfactory in other respects. As noted in Shuffield, when a
combination of reasons is offered by the State, an appellant cannot rebut the State's
proffered reason by showing that the State did not strike prospective jurors who
shared only a single characteristic with the one who was struck. Id. The State asked
venire member 18 the same line of questioning that other venire members were asked,
stopping for elaboration as was needed when the venire member became indecisive
about the ability to convict. The record does not indicate that the State exercised its
strike based on group characteristics that venire member 18 did not possess.

 Based on the circumstances before the trial court, we hold that it did not abuse
its discretion in allowing venire member 18 to be removed by peremptory strike. The
trial court could reasonably have concluded that the State articulated a set of reasons
for striking that, when combined, were unique to that individual and were not race-
or gender-based on their face. 

 Consequently, we overrule appellant's first point of error.

 Suppression of DNA Evidence 

 In his second point of error, appellant contends that "the trial court erred in
overruling [his] motion to suppress tainted DNA evidence." 

 During trial, the State attempted to introduce DNA evidence obtained during
Hamilton's rape kit examination. Appellant moved to suppress the evidence, and a
hearing was conducted outside the presence of the jury to determine the evidence's
admissibility. Appellant argued that due to a contamination in the process (the lab
technician accidentally used a pair of scissors that had not been properly cleaned and
consequently added a third person's DNA to the first-attempted test), the results of
the DNA test were not reliable and should not have been admitted into evidence. The
trial court denied appellant's motion and allowed the DNA evidence into evidence.

A. Standard of Review

 We may reverse the trial court's ruling admitting scientific evidence only if the
trial court abused its discretion. Russeau v. State, 171 S.W.3d 871, 881 (Tex. Crim.
App. 2005). 

B. The Law

 The trial court's responsibility under Texas Rule of Evidence 702 is to
determine whether proffered scientific evidence is sufficiently reliable and relevant
to assist the jury. Jackson v. State, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000). Rule
702 provides: "[I]f scientific, technical, or other specialized knowledge will assist the
trier of fact to understand the evidence or to determine a fact in issue, a witness
qualified as an expert by knowledge, skill, experience, training, or education may
testify thereto in the form of an opinion or otherwise." Tex. R. Evid. 702. In order
to demonstrate reliability, the proponent of the evidence must show that the
underlying scientific theory is valid, the technique applying the theory is valid, and
the technique was properly applied on the occasion in question. Kelly v. State, 824
S.W.2d 568, 573 (Tex. Crim. App. 1992). All three of these criteria must be proven
to the trial court, outside the presence of the jury, in a hearing. Id. Factors that affect
the trial court's determination of reliability include: 

 1. the extent to which the underlying scientific theory and technique
are accepted as valid by the relevant scientific community, if such
a community can be ascertained; 

 

 2. the qualifications of the expert testifying; 

 

 3. the existence of literature support or rejecting the underlying
scientific theory and technique; 

 

 4. the potential rate of error of the technique; 

 

 5. the availability of other experts to test and to evaluate the technique; 


 6. the clarity with which the underlying scientific theory and technique
can be explained to the court; and 


 7. the experience and skill of the person who applied the technique on
the occasion in question. 


Id.

C. Analysis

 The trial court held a hearing outside of the jury's presence to determine
whether the DNA evidence should be suppressed. Appellant did not object to the
validity of DNA testing or to the credentials of the State's witness. Instead, appellant
argued for suppression of the evidence based on the application of the procedure in
this particular instance because the State's expert witness allegedly did not follow
proper protocol, rendering the test unreliable. Proper protocol at the crime laboratory
in which the DNA test was run required that all tests be run twice. If there was any
impropriety in the sample, the procedure called for the tester to report the
contamination to the supervisor, to write a memorandum about the issue, and to
attempt to trace the procedure back to the point at which the contamination took
place. 

 The State's expert testified that the first time that he ran the DNA sample, there
were three different DNA contributors present. The witness immediately stopped and
attempted to identify the three persons represented. The mixture was a combination
of the complainant's, appellant's, and a third contributor's DNA. The witness then
traced the procedure back to a pair of scissors that he had used, but had not properly
cleaned between sample extractions. This conclusion was confirmed by the fact that
the third contributor's DNA matched the DNA from a separate case. After the source
of contamination was discovered, the witness contacted his supervisor, and they
agreed to begin a completely new extraction to see if the contamination was still
present; it was not. The second result contained two of the three contributors from
the original test, the complainant's and appellant's DNA.

 Appellant argues that because the State's expert witness did not send the
sample to another laboratory after the contamination, the results were unreliable. 
Appellant cites to the National Research Council's recommendation for retesting at
an independent laboratory after a contamination and to the "Scientific Working Group
on DNA Analysis Methods" organization, the general suggested guidelines of which
recommend that any retesting be given to another analyst after a contamination. 
However, the current protocol at the laboratory in which the State's expert worked,
which is accredited by the National Association of Crime Laboratory Directors, did
not require that these suggested guidelines be followed. In the case of a DNA
examination, two tests were required, and any contamination was to be reported to the
supervisor, traced back to the source, and eliminated. 

 Courts have previously held that, even in the face of suggestions for
improvements of a protocol, and even if those protocols are later upgraded, it is the
current set of accepted standards that governs reliability; if that current protocol has
not been violated, the evidence is held to be reliable at the time. Jackson v. State 17
S.W.3d 664, 672 (Tex. Crim. App. 2000); Hines v. State 38 S.W.3d 805, 808-09
(Tex. App.--Houston [14th Dist.] 2001, pet. denied). 

 Under the circumstances here, the trial court's decision to admit the DNA
results was not outside of the zone of reasonable disagreement. The evidence was
offered properly in a hearing outside of the jury's presence, the evidence and the
expert witness were established within the Daubert (2) standard, and there was evidence
from which the trial court could reasonably have concluded that the expert witness
followed the current laboratory protocol upon discovering the contamination.

 Consequently, we overrule appellant's second point of error. Notice of Intent to Introduce Extraneous Acts at Punishment

 In his third point of error, appellant contends that "the State failed to give
proper notice of its intent to introduce extraneous acts under Rule 404(b) of the Texas
Rules of Evidence." 

 During the punishment phase of the trial, the State introduced into evidence a
penitentiary packet ("pen packet") to prove appellant's prior conviction for
unauthorized use of a motor vehicle. The pen packet indicated that the prior crimes
of forgery and robbery, which appellant argues on appeal were improperly admitted,
had been proved as enhancements for the unauthorized-use-of-a-motor-vehicle
conviction. Appellant argued that he had received insufficient notice of the State's
intent to use these extraneous acts because these two particular crimes were added 
as enhancements to the indictment in the present case only the Friday before the trial
began (although it was a full eight days before the punishment phase began) and that
they should be denied admission into evidence for a violation of the notice
requirements of Rule of Evidence 404(b). The State argued that the pen packet had
been in the State's file for over two years and that, over a week before trial started,
oral notice had been given, as well as notice by fax and e-mail, of the State's intent
to use the prior convictions. Counsel for appellant admitted that he was not surprised
by the additional crimes, but argued that having the pen packet containing
information of these crimes in the State's file did not put him on notice the State
intended to introduce them. The trial court held that the combination of the open file
and written and oral notice a week before trial provided enough notice to allow
admission of the extraneous acts into evidence. 

A. Standard of Review

 The trial court's ruling on introducing extraneous acts under Rule of Evidence
404(b) is not to be disturbed on appeal absent a clear abuse of discretion. Page v.
State, 137 S.W.3d 75, 78 (Tex. Crim. App. 2004). 

B. The Law

 Texas Code of Criminal Procedure article 37.07, section 3(a)(1) governs
evidentiary matters at the punishment stage of a criminal trial. See Tex. Code of
Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon 2006). The statute expressly
incorporates Texas Rule of Evidence 404(b), which provides:

 Evidence of other crimes, wrongs, or acts is not admissible to prove the
character of a person in order to show action in conformity therewith. 
It may, however, be admissible for other purposes, such as proof of
motive, opportunity, intent, preparation, plan, knowledge, identity, or
absence of mistake or accident, provided that upon timely request by the
accused in a criminal case, reasonable notice is given in advance of trial
of intent to introduce in the State's case-in-chief such evidence other
than that arising in the same transaction. 


Tex. R. Evid. 404(b); see Tex. Code of Crim. Proc. Ann. art. 37.07, § 3(a)(1).


 The purposes of rule 404(b) are to prevent surprise and to allow a defendant
adequately to prepare to defend against the extraneous-offense evidence. Waltmon
v. State, 76 S.W.3d 148,157-58 (Tex. App.--Beaumont 2002, no pet.) (citing Hayden
v. State, 66 S.W.3d 269, 271, 273 n.16 (Tex. Crim. App. 2001)). What constitutes
reasonable notice depends upon the facts of each case. See Webb v. State, 36 S.W.3d
164, 178 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd). When proof of the
extraneous offenses is contained in the State's file, the State's open-file policy has
been held to be insufficient to provide the notice required. Buchanan v. State, 911
S.W.2d 11, 15 (Tex. Crim. App. 1995).

C. Analysis

 Appellant argued at trial that the State did not give proper notice of intent to
use these two extraneous acts. The trial was set to begin on February 27, 2006. On
February 2, 2004, the State filed notice of intent to introduce extraneous bad acts,
including a 1993 conviction of unauthorized use of a motor vehicle. On February 24,
the week before the trial, the State filed an amendment to the notice of intent, adding
several crimes committed by appellant while in the course of sexually assaulting
Hamilton (3) and two other past convictions for forgery and robbery, which appellant
is now arguing were improperly admitted due to lack of notice. These additional
convictions were introduced through the unauthorized-use-of-motor-vehicle pen
packet (they were proved as enhancements for that case), and notice of the
unauthorized-use conviction was included in the enhancement paragraphs of the
indictment. Appellant argued at trial that he had requested notice over a year before
and that his request was in the State's file, though no such document exists in the
clerk's record and no formal evidence of that letter was brought before the trial court. 
The State contended that the duty to provide notice was never triggered because a
timely request had never been made by appellant. The trial court chose to look past
this lack of evidence of appellant's request, however, and proceeded to determine
whether the notice was timely.

 In Self v. State, the defendant was given five days' notice and was not
surprised; the court ruled that the notice was proper and timely. Self v. State, 860
S.W.2d 261, 264 (Tex. App.--Fort Worth 1993, pet. ref'd). Here, appellant had over
a week's notice of the State's intent to introduce the two extraneous crimes. In regard
to the extraneous offenses in the enhancement allegations, appellant had been put on
notice for much more than a week. 

 As in Webb, appellant did not request a continuance or seek out any other
postponement of the trial that would indicate surprise and a lack of preparation for
a defense of the issues raised by the complained-of extraneous offenses. See Webb,
36 S.W.3d at 183. Indeed, counsel for appellant admitted that he was not surprised (4)
and made no argument as to how appellant was prevented from preparing an adequate
defense. Moreover, all of appellant's prior convictions were from Galveston County,
the same county in which the trial was to take place. There was thus no need for
additional time to obtain these files to prepare a defense, as there might arguably have
been if the convictions had been from another county or state. 

 Under the circumstances of this case, we hold that the trial court did not abuse
its discretion in overruling appellant's objection to the introduction of evidence of the
complained-of extraneous offenses. 

 Consequently, we overrule appellant's third point of error.

Conclusion


 We affirm the judgment of the trial court.



 Tim Taft

 Justice


Panel consists of Justices Taft, Alcala and Hanks 


Do not publish. See Tex. R. App. P. 47.2(b).

1. Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712 (1986). 
2. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S. Ct. 2786
(1993). 
3. Offenses committed during the commission of the offense charged are
expressly excluded from the notice requirement of Texas Rule of Evidence
404(b). Tex. R. Evid. 404(b).
4. Appellant relies on Webb for the proposition that lack of surprise is an
insufficient basis upon which to deny an objection based on rule 404(b). See
Webb, 36 S.W.3d at 178. However, in this case, there is much more that mere
lack of surprise.