Opinion issued June 19, 2008








 






In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00865-CR






LEE DARAIN SCOTT, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 178th District Court

Harris County, Texas

Trial Court Cause No. 1102977






MEMORANDUM OPINION

 A jury found appellant, Lee Darain Scott, guilty of possession of cocaine
weighing between four and 200 grams, found two felony enhancements true, and
assessed punishment at 45 years' confinement. In point of error one, appellant
contends the trial court erred in overruling his motion to suppress. In points of error
two and three, appellant contends the evidence is legally and factually insufficient to
support his conviction. We affirm.

BACKGROUND

 On February 3, 2007, Houston Police Officers Dexter and Walker were driving
through an area known for a high amount of narcotics trafficking. Both officers had 
previously participated in multiple, narcotics-related arrests in the area. As the
officers drove past a convenience store, they noticed appellant approach several cars. 
Believing that he was buying or selling drugs, the officers drove past, made a u-turn,
and pulled into a nearby parking lot so that they could watch appellant further. As
the officers watched, appellant approached two or three other cars. Officer Walker
testified that, as he watched, he saw appellant put his hands in the pouch of a sweater
he was wearing "going from there to there (indicating)," which made him think that
appellant was "holding something or, you know, something is definitely going on
there."

 Based on their observation of appellant, Walker and Dexter decided to
approach him. As the officers approached, they saw appellant get an "oh, 'S'" look
on his face," like a "deer in the headlights," and then bolt inside the store. Appellant
did not buy anything in the store, but came right back outside. Walker believed that
appellant might have dropped something in the store, so he went inside to look while
Dexter approached appellant. Dexter asked appellant for his identification. As
Dexter was questioning appellant, appellant kept reaching towards the kangaroo
pouch of his sweater and "trying to reach into it." Believing that appellant might
have a weapon, Dexter performed a pat-down search of appellant. Dexter
immediately felt a bulge in the pouch pocket of appellant's sweater that he could tell
was a plastic bag tied with a knot containing numerous crunchy objects. Based on his
training and experience, Dexter concluded that the baggie tied with a knot contained
crack cocaine. Dexter removed the baggie just as Walker was coming out of the
store. Dexter also found a razor blade in appellant's pocket.

 Both officers testified that, after the cocaine was discovered, appellant became
"squirmy," so Walker handcuffed appellant and put him in the squad car. Dexter read

appellant his statutory warnings, and the officers began driving appellant to the police
station. As they were doing so, appellant said that "it was his first time in the area to
sell, and that if [the officers] let him go, he'd never return."

MOTION TO SUPPRESS

 In his first point of error, appellant contends the trial court erred by overruling
his motion to suppress evidence. Specifically, appellant contends that the officers did
not have sufficient reasonable suspicion to justify his detention and the subsequent
pat-down search. 

Standard of Review

 Our standard for reviewing a trial court's ruling on a motion to suppress
evidence is bifurcated; we give almost total deference to a trial court's determination
of historical facts and review de novo the trial court's application of the law. 
Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002). In reviewing a ruling
on a question of the application of law to facts, we review the evidence in the light
most favorable to the trial court's ruling. Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997). At a suppression hearing, the trial court is the sole and exclusive
trier of fact and judge of the witnesses' credibility. Maxwell, 73 S.W.3d at 281. 
Accordingly, the trial court may choose to believe or to disbelieve all or any part of
the witnesses' testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

Initial Detention

 A police officer may approach an individual in public and ask questions
without any specific justification. State v. Perez, 85 S.W.3d 817, 819 (Tex. Crim.
App. 2002); see Pennywell v. State, 127 S.W.3d 149, 152 (Tex. App.--Houston [1st
Dist.] 2003, no pet.). During such an encounter, the individual is free to leave or to
refuse to answer the officer's questions. See Pennywell, 127 S.W.3d at 152. 
However, an encounter may become a detention when the officer's actions would
communicate to a reasonable person that he was not free to refuse the officer's
requests or otherwise terminate the interaction. Id. An officer may conduct such a
brief investigative detention, or "Terry stop," when he has a reasonable suspicion to
believe that an individual is involved in criminal activity. Balentine v. State, 71
S.W.3d 763, 768 (Tex. Crim. App. 2002) (citing Terry v. Ohio, 392 U.S. 1, 21, 88 S.
Ct. 1868, 1880 (1968)). The reasonableness of a temporary detention must be
examined in terms of the totality of the circumstances and will be justified when the
detaining officer has specific, articulable facts, which, taken together with rational
inferences from those facts, lead him to conclude that the person detained actually is,
has been, or soon will be engaged in criminal activity. Id.; Woods v. State, 956
S.W.2d 33, 35 (Tex. Crim. App. 1997).

 Here, Dexter testified that he had been a police officer for seven years, had
frequently seen people selling drugs, and had frequently made drug-related arrests. 
When Dexter spotted appellant, appellant was in a high crime area known for
narcotics transactions. See Illinois v. Wardlow, 528 U.S. 119, 124, 120 S. Ct. 673,
676 (2000) (noting that, while presence in high-crime area alone is not enough to
support reasonable suspicion, fact that incident occurs in high crime area is relevant
factor to be considered in reviewing totality of circumstances). The officers saw
appellant repeatedly approach several, random cars. See Davis v. State, 905 S.W.2d
655, 661 (Tex. App.--Texarkana 1995, pet. ref'd) (noting that drug dealers often
approach unfamiliar cars); McKinney v. State, 761 S.W.2d 549, 585 (Tex.
App.--Corpus Christi 1988, no pet.) (noting that observance of repeated transactions
would be relevant to determining reasonable suspicion). When the officers
approached appellant, he turned and fled into the store. See McKinney, 761 S.W.2d
at 552-53 (noting that turning away rapidly upon seeing officers would be factor in
determining reasonable suspicion). Dexter testified that he had personally observed
people buying and selling crack cocaine by going up to cars in this area in the past. 
See Id. (noting that evidence that drugs are normally exchanged in a manner similar
to the transaction at issue would be factor in determining reasonable suspicion). 
Based on these circumstances, we decide that the record supports a finding that the
police reasonably suspected, based on specific and articulable facts, that appellant
was engaged or soon would be engaged in criminal activity.

Pat-Down Search

 We turn to whether Dexter could legally frisk appellant for weapons. In
making this determination, we apply an objective standard, which is whether the facts
available to Dexter at the time of the frisk would cause a reasonably cautious person
to believe that the action taken was appropriate. See Griffin v. State, 215 S.W.3d 403,
409 (Tex. Crim. App. 2006). In Griffin, the court recognized that "it is objectively
reasonable for a police officer to believe that persons involved in the drug business
are armed and dangerous." Id. This belief is reasonable, especially when the suspect
"moves his hand toward his pocket during the investigative detention." Id.

 We have already held that the officers had reasonable suspicion that appellant
was, or would soon be engaged in criminal activity, i.e., a drug transaction. During
the investigative detention, appellant repeatedly put his hands in the pouch of his
sweater. Under these circumstances, it was objectively reasonable for Dexter to
believe that appellant might be armed. Thus, the pat-down search of appellant was
lawful.

"Plain Feel" Seizure

 Next, we decide whether Dexter's removal of the plastic baggie containing the
cocaine from the pouch of appellant's sweater was lawful. Under Minnesota v.
Dickerson, 508 U.S. 366, 374-75, 113 S. Ct. 2130, 2136-37 (1993), a police officer
may seize non-weapon contraband that he detects during a pat-down search under
Terry when the contraband's "contour or mass makes its identity immediately
apparent." This is often referred to as a "plain feel" exception to the warrant
requirement. See Griffin, 215 S.W.3d at 405 n.2. In Griffin, the police had
information that the defendant was carrying cocaine in plastic tubes. Id. at 410. 
Because the identity of the tubes as contraband was immediately apparent to the
officer during the pat-down, he was justified in seizing those tubes during the pat-down search. Id. 

 In this case, Dexter testified as follows:

 [Prosecutor]: So you said that you patted him down and got his hand out
of there. Can you describe to the jury what happened next?


 [Dexter]: I immediately felt the -- a bulge in that front area, which is --
had the packaging of obvious crack cocaine in that area. It's quite
common that that packaging is used, crack cocaine inside of a plastic
bag with a knot tied on top of it.


 Dexter further testified that rocks of crack cocaine have a distinctive feel
because they are "crunchy," unlike regular rocks or other substances. Thus, the
record supports a finding that Dexter, based on his knowledge and experience,
immediately recognized the object in appellant's pouch as a baggie of crack cocaine. 
As such, the seizure of the crack cocaine was lawful.

 Accordingly, we overrule point of error one.

SUFFICIENCY OF THE EVIDENCE

 In points of error two and three, appellant contends the evidence was legally
and factually insufficient to support a conviction for possession of cocaine. Both
points of error are premised on the assumption that the trial court erred by denying
appellant's motion to suppress the cocaine. Because we have already held that the
cocaine was lawfully seized, we will consider the cocaine in determining the
sufficiency of the evidence. (1)

Standard of Review

 When an appellant challenges both legal and factual sufficiency of the
evidence, we must first determine whether the evidence was legally sufficient to
support the verdict. Harmond v. State, 960 S.W.2d 404, 406 (Tex. App.--Houston
[1st Dist.] 1998, no pet.). We review the legal sufficiency of the evidence by viewing
the evidence in the light most favorable to the verdict to determine whether any
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). 
Although our analysis considers all the evidence presented at trial, we may not re-weigh the evidence and substitute our judgment for that of the fact finder. Id.

 Factual sufficiency analysis is broken down into two prongs. First, we must
ask whether the evidence introduced to support the verdict, although legally
sufficient, is so weak that the jury's verdict seems clearly wrong and manifestly
unjust. Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006). Second,
we must ask whether, considering the conflicting evidence, the jury's verdict,
although legally sufficient, is nevertheless against the great weight and preponderance
of the evidence. Id. at 415. In conducting this review, we view all of the evidence
in a neutral light. Id. at 414. We are also mindful that a jury has already passed on
the facts and that we cannot order a new trial simply because we disagree with the
verdict. Id. What weight to give contradictory testimonial evidence is within the sole
province of the jury because it turns on an evaluation of credibility and demeanor. 
Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). Therefore, we must
defer appropriately to the fact finder and avoid substituting our judgment for its
judgment, and we may find evidence factually insufficient only when necessary to
prevent manifest injustice. Id. at 407; see also Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000).
Possession of Cocaine

 A person commits an offense if the person knowingly or intentionally possesses
a controlled substance, cocaine. See Tex. Health & Safety Code Ann. §§ 481.115
(a), (d); .112(a); .102(3)(D) (Vernon 2003 & Supp. 2007). To establish the unlawful
possession of a controlled substance, the State must prove that the defendant
exercised care, control, or management over the contraband and that the defendant
knew the matter possessed was contraband. Tex. Health & Safety Code Ann. §
481.002(38) , 481.115 (Vernon 2005).
 Legal Sufficiency

 The State presented evidence that the baggie containing the cocaine was found
in the front pouch pocket of appellant's sweater. See Akins v. State, 202 S.W.3d 879,
892 (Tex. App.--Fort Worth 2006, pet. ref'd) (holding that finding controlled
substance in accused's pocket was "abundant evidence of his possession of [a
controlled substance] from which the jury could have concluded that [accused] was
in possession of [a controlled substance]"). Appellant made an inculpatory statement
when he told the officers that "it was his first time in the area to sell, and that if [the
officers] let him go, he'd never return." Appellant was also carrying a razor, which
is often used as drug paraphernalia for cutting crack cocaine. Accordingly, we hold
that the evidence presented by the State is of such strong logical force that a
reasonable fact finder could conclude beyond a reasonable doubt that appellant
knowingly possessed cocaine. See King, 29 S.W.3d at 562.

 Accordingly, we overrule point of error three.

 Factual sufficiency

 Regarding the factual sufficiency of the evidence, appellant points out that (1)
repeatedly walking up to several cars is consistent with lawful as well as unlawful
behavior; (2) the fact that this was a high crime area gave the officers nothing more
than a "hunch" that he was dealing drugs; (3) the officers did not recover any drugs
from the store, even though they suspected that appellant had ducked into the store
to abandon his contraband; (4) although officers searched appellant for weapons, they
found none; and (5) appellant could have been putting his hands in his pockets
because it was cold. Appellant argues that these facts "cannot independently form the
reasonable suspicion to search his clothing in the guise of a pat-down search." 
However, whether the officers had sufficient reasonable suspicion is not an element
of the offense. A "factual-sufficiency review is appropriate only as to the sufficiency
of the State's proof as to elements of the offense." Hanks v. State,137 S.W.3d 668, 
672 (Tex. Crim. App. 2004). "Such a review is not appropriate as to the admissibility
of evidence when such a question is submitted to the jury pursuant to Article
38.23(a)." Id. Because appellant's factual sufficiency argument addresses only the
issue of reasonable suspicion, i.e., admissibility of the evidence, and does not
challenge an element of the offense of possession, we overrule point of error two.

CONCLUSION

 We affirm the judgment of the trial court.


 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Keyes and Higley.


Do not publish. Tex. R. App. P. 47.2(b).


1. 
 
 
 
 
 
-- 
 
 
 
 
 ' 
 '